1  STATE OF COLORADO, DEPARTMENT OF REVENUE, MOTOR VEHICLE DIVISION

2  Case No. 06-3488

3  _____

4  TRANSCRIPT OF PROCEEDINGS HELD APRIL 5, 2006

5  _____

6  STATE OF COLORADO,

7        Petitioner,

8  v.

9  BUCK MALOY MELTON,

10       Respondent.
_____

11       The above-entitled matter commenced on February 28,

12 2006 for Hearing before ROBERT LEIB, a Hearing Officer for the

13 Department of Revenue.

14       This is a complete transcript of the proceedings

15 recorded in this case on the above date.

16

17     APPEARANCES:

      FOR THE RESPONDENT:   Jon R. Schumacher

18

19               DISCLAIMER

20 This transcript has been prepared for non-appeal purposes and has not been reviewed or certified by the Hearing Officer as being an accurate transcription of the within proceedings. The Department of Motor Vehicles

21 Revenue Hearing Section does not deem an uncertified transcript as suitable for use as evidence in another proceeding or for purposes of appeal of this

22 proceeding. Certification by the Hearing Officer is required if the transcript is to be used for any purpose in court.

23

24

25

```
 1                              INDEX

 2                         Direct   Cross   Redirect   Recross

 3   WITNESSES:

 4   Officer Moore
        (Testimony)            7
 5      (By Mr. Schumacher)            11

 6   EXHIBITS:                                  Offered   Received
     Petitioner's Exhibit A                        5
 7
```

A/V▼ TRONICS, INC.
Electronic Court Reporting & Transcription
Denver, CO * Phoenix, AZ * Tucson, AZ
(303) 634-2295

3

<pre>
 1                    February 28, 2006
 2          HEARING OFFICER:  Good afternoon.  My name is Robert
 3  Leib, I'm a hearing officer for the Department of Revenue for
 4  the State of Colorado, and this is case number 063488.  For the
 5  record, Mr. Melton, will you please state your name and
 6  address.
 7          THE RESPONDENT:  Buck Maloy Melton, 1206 West
 8  Tomechee (phonetic) Number 1, Gunnison, Colorado.
 9          HEARING OFFICER:  Thank you, sir.  Representing you
10  as counsel, Counsel, may I please have your name and
11  registration number.
12          MR. SCHUMACHER:  Yes.  It's John Schumacher,
13  registration number 24780.
14          HEARING OFFICER:  Thank you.  And also present by
15  telephone is the arresting officer.  Officer, may I please have
16  your name and ID number.
17          MR. MOORE:  My name is Ronald Moore, I'm employed by
18  the City of Gunnison Police Department.  My DSN is 2013.
19          HEARING OFFICER:  Thank you.  This hearing is held
20  under the authority of Colorado revised Statute 422-126.  The
21  usual issue at a hearing such as this is whether by a greater
22  weight of the evidence a driver is found to be driving a motor
23  vehicle in the State of Colorado when the amount of alcohol in
24  his blood is 0.08 or more grams of alcohol per 210 liters of
25  breath, or 100 milliliters of blood, at the time of driving or
</pre>

1  within two hours thereafter.
2          In order to determine the breath alcohol content or
3  blood alcohol content of a driver, there's another law in
4  Colorado called express consent law, which states that any
5  driver thought to be driving impaired by alcohol or some
6  controlled substance must choose a chemical test of his breath
7  or blood, or submit to a urine test if so ordered by the
8  officer.
9          If a person refuses to take a chemical test, like
10 saying "No, I'm not going to take any test," or refuses to
11 cooperate in the completion of a test by saying, "Oh, I'll take
12 a breath test," but then refuses to blow into the Intoxilyzer.
13 Or does not cooperate so the test can be done within two hours
14 of the time of driving, and that would be explained by a person
15 saying, "Well, I don't know whether I want a breath test or a
16 blood test," (inaudible) and finally makes his selection, but
17 the test cannot be completed within two hours of the time of
18 driving, the officer can site a refusal.
19         And that is the issue at this hearing.  Because of a
20 prior revocation for a refusal, if there -- the facts sustain a
21 revocation for a refusal at this hearing, that revocation will
22 go into effect for a period of two full years of no driving.
23 If the facts do not sustain a revocation the case will be
24 dismissed.
25         Now I have a packet of various documents presumably

```
 1    submitted by the arresting officer.  I'm labeling these
 2    documents collectively as Exhibit A.
 3           Counsel, have you had a chance to review those
 4    documents?
 5           MR. SCHUMACHER:  I have.  And just to confirm we did
 6    request a copy of the express consent packet from the
 7    Department.
 8           HEARING OFFICER:  Uh-huh.
 9           MR. SCHUMACHER:  The Division, we did receive those.
10    It's fairly short, it contains the express consent affidavit
11    and notice of revocation.  The incident report, a copy of the
12    summons, and essentially a -- well, an arrest report is the
13    last document in that series of documents.
14           HEARING OFFICER:  Yeah.  That's correct.  And there's
15    nine pages?
16           MR. SCHUMACHER:  Yes.
17           HEARING OFFICER:  Okay, good.  Do you have any
18    objection to their introduction into evidence?
19           MR. SCHUMACHER:  No, I don't.  But I would like to
20    make a preliminary record on an issue when you're ready.
21           HEARING OFFICER:  All right.  You may do that now,
22    Counsel.
23           MR. SCHUMACHER:  Okay.  Well, before we begin I need
24    to make an offer of proof.  Since Officer Moore is here under
25    my subpoena --
```

1    HEARING OFFICER: Uh-huh.

2    MR. SCHUMACHER: -- I think I'm ethically obligated to advise him of his Fifth Amendment right against self-incrimination if he so chooses to testify in this matter. In this case, and here's the offer of proof, Mr. Melton was refused following his arrest a temporary permit even though he surrendered his license, and even though he had a valid license at the time.

This is significant because two days after this arrest on January 4th of 2006, Mr. Melton was detained and arrested by the officer who was a passenger at the time of the previous arrest two days earlier with Gunnison Police Department on the basis that Mr. Melton's driving privileges were revoked. He was arrested and jailed for driving under revocation.

The -- I listened to the dispatch tape regarding that subsequent arrest for driving under revocation. Officer Cowan was the officer who called it in. She confirmed -- actually dispatch confirmed that Mr. Melton's license was in fact valid at the time of that subsequent arrest. Nevertheless he was, as I indicated, arrested and jailed and had to post a $10,000 bond. And so that's obviously a major problem.

And I bring that up because this is obviously that action -- well, first of all not issuing the temporary permit to begin with and then the subsequent arrest by the same

7

1   department for driving under revocation is State action.  And
2   any testimony regarding it today, could subject the officer
3   potentially to federal prosecution for official misconduct or
4   even conspiracy.  And so I think it's again my ethical duty to
5   advise the Officer of that.
6            HEARING OFFICER:  All right.  But you subpoenaed the
7   officer, is that correct?
8            MR. SCHUMACHER:  That's correct.
9            HEARING OFFICER:  All right.  Officer, do you still
10  wish to testify?
11           MR. MOORE:  Yes, I do.
12           HEARING OFFICER:  Thank you.  So we will continue
13  then, Counsel.  We'll -- I'll put the Officer under oath.
14                          OFFICER MOORE
15  called as a witness on behalf of the Petitioner, having been
16  previously sworn, did testify upon his oath as follows:
17                            TESTIMONY
18           HEARING OFFICER:  Would you please present the
19  allegations of the State.  You may refer to your documents but
20  please do not read from them verbatim.
21           THE WITNESS:  All right.
22           HEARING OFFICER:  Thank you.
23           THE WITNESS:  First of all I'm employed by the City
24  of Denison as a police officer.  On the day of January 2nd,
25  2006 approximately 8:22 a.m. I was on duty and I was working

1   day shift.  I was on routine patrol in the 200 block of North
2   Wisconsin Street traveling southbound at the time.
3           At that time, approximately 8:22 a.m. I observed a
4   blue Mazda traveling eastbound in the 200 block of Virginia
5   Avenue.  As the vehicle approached the intersection which is
6   controlled by a four-way stop of Virginia and Wisconsin, I
7   observed that the vehicle failed to stop as required by law and
8   proceed through the intersection.  I initiated my emergency
9   overhead lights and contacted the vehicle in the 100 block of
10  West Virginia Avenue.
11          I approached the vehicle and observed the driver, who
12  only rolled the window down approximately six inches.  I asked
13  the driver for his license, registration and proof of
14  insurance.  At this time I could detect the odor of an unknown
15  alcoholic beverage coming within the vehicle.  I asked the
16  driver, identified as Mr. Buck Melton, to roll the window all
17  the way down so that we could properly speak to each other, and
18  so that I could get these items I requested.
19          Mr. Melton was reluctant to roll the window down and
20  I had to ask him several times before he did roll that window
21  down.  I observed that Mr. Buck Melton's actions were showing a
22  lack of dexterity as he basically fumbled through the glove box
23  attempting to get the items I'd request, being the driver's
24  license, registration and proof of insurance.
25          I observed that Mr. Melton had slurred thick tongue

1  speech and that he could not follow simple instructions or
2  answer questions as I spoke to him.  I also observed that Mr.
3  Buck Melton's eyes were red and bloodshot.  After providing me
4  with his driver's license Mr. Melton provided me with a bill of
5  sale for the vehicle stating to me that that was in fact his
6  registration.
7       I had already observed that the registration to the
8  vehicle was in fact laying in the glove box on top of the
9  paperwork he had just went through.  I gave the bill of sale
10 back to Mr. Melton, asked him for the insurance card which I
11 could see laying on his lap.  Mr. Melton gave me that
12 information.
13      I asked Mr. Melton where he was traveling to and
14 where he was coming from.  He stated that he was going to a
15 friends house.  I asked him where his friend lived and he could
16 not tell me a street or direction.  I asked Mr. Melton where he
17 was coming from again, he said that he was coming from his
18 home.  I asked him where his address was and he told me that it
19 was nearby.  I asked him again for the address, he stated that
20 it was on Tomechee Avenue.  The third time I asked Mr. Melton
21 for his address he stated the numbers two and number six and
22 then Mr. Melton looked away from me and proceeded to do
23 nothing.
24      I explained to Mr. Melton the reason for the contact,
25 stating that I observed him failing to stop as required to do,

10

1  at the controlled intersection. Mr. Melton told me that he had
2  attempted to stop, but then he had (inaudible) slipped through
3  the intersection. And I explained to Mr. Melton that I never
4  at the time did I see the brake lights come on, on the vehicle.
5  I did not observe any notion of the vehicle slowing down, be a
6  dipping, compacting of the springs, et cetera. And that Mr.
7  Melton did not appear to skid at any time. Basically he
8  (inaudible) rate of motion or speed that I'd observed.
9      Mr. Melton was asked if he had been drinking. Mr.
10 Melton said that he had not been drinking. I asked Mr. Melton
11 if he was also under the influence of any drugs or medications
12 at the time. Mr. Melton told me that he was not under the
13 influence of any drugs or medication.
14     I explained to him my observations and I asked him to
15 step out of the vehicle to speak to me. Mr. Melton displayed a
16 lack of balance as he exited his vehicle and I had him walk to
17 the sidewalk so as not to be in the street.
18     I was able to detect the odor of an unknown alcoholic
19 breath coming from Mr. Melton's breath -- or his breath outside
20 of the vehicle. Mr. Melton was asked if he would cooperate
21 with a series of voluntarily physical maneuvers to determine
22 his ability to safely operate his vehicle. He stated that he
23 did not understand what I was asking. I had to explain this to
24 him several times including my observations and why I believed
25 that he was under the influence of alcoholic drugs.

11

1  Eventually Mr. Melton did consent to physical
2  maneuvers, which I administered and to which Mr. Melton
3  subsequently failed to satisfactorily complete.  I placed Mr.
4  Melton under arrest for further investigation for driving while
5  under the influence of alcohol at 8:36 a.m.
6  I explained to Mr. Melton Colorado express consent
7  and I asked him if he would chose a chemical test of his breath
8  or blood.  Mr. Melton refused all tests in saying that he would
9  not cooperate.
10  Mr. Melton was transported to the Gunnison County
11  Jail where he was turned over to the jail for violations of
12  driving a vehicle while under the influence of alcohol.
13  HEARING OFFICER:  All right.  Counsel, would you like
14  to cross-examine the Officer?
15  MR. SCHUMACHER:  Yes, I would.
16  HEARING OFFICER:  Please.
17  CROSS-EXAMINATION
18  BY MR. SCHUMACHER:
19  Q    Officer Moore, I think you testified just a moment ago
20  that Mr. Melton had only rolled down his window part of the
21  way, I think six inches or so; is that correct?
22  A    Yes, I did.
23  Q    Okay.  Now this was on the 2nd of January, correct?
24  A    Yes, it was.
25  Q    Okay.  It's pretty cold outside, especially in

12

1 Gunnison, correct?
2     A   That it is.
3     Q   Okay. So if somebody rolled down their window part
4 way that's not by definition an evasive action, is it?
5     A   It's not by definition an evasive action. It makes it
6 very hard for me to receive the documents I asked for and to
7 conduct an investigation, contact with that subject.
8     Q   All right. I just wanted to make sure you weren't
9 implying that that was evasive.
10    A   No.
11    Q   Okay. Now it's fairly common in Gunnison,
12 particularly in January, for roads to be icy for a fairly
13 substantial period of time; would you agree with that?
14    A   Yes, it is.
15    Q   Okay. And oftentimes it can be hard to stop, even at
16 controlled intersections; would you agree with that?
17    A   It does happen.
18    Q   Okay. Now you indicated that you couldn't see any
19 brake lights go on in Mr. Melton's vehicle, correct?
20    A   I did not observe any brake lights from the car.
21    Q   Okay. You're aware, aren't you, that his vehicle is a
22 stick-shift and downshifting will slow down his vehicle?
23    A   Yes. I do remember that it was a stick.
24    Q   Okay. So -- well, when you approached Mr. Melton's
25 vehicle did you tell Mr. Melton or -- let me -- strike that.

```
 1  Didn't you tell Mr. Melton when you approached his vehicle,
 2  "Oh, you're Buck, we've been looking for you?"
 3      A    I have never had any contact with Mr. Melton in the
 4  past, nor was there any reason to have contact with Mr. Melton
 5  besides the failure to stop at the controlled intersection of
 6  Wisconsin and Virginia.
 7      Q    Okay.  So you never told Mr. Melton that you -- that
 8  the Department had been looking for him?
 9      A    There was no reason for the Department to be looking
10  at the time, I've had no contact with him.  So, no, I did not
11  say that.
12      Q    You didn't say that, okay.  Now at the time of his
13  arrest for DUI he had a valid license, correct?
14      A    That he did.
15      Q    Okay.  Yet you refused to issue him a temporary
16  permit, correct?
17      A    That I did.
18      Q    Okay.  And what was your basis for that refusal?
19      A    My basis for that, sir, would be the fact that in
20  dealing with Mr. Melton he, at the bottom of the document
21  number two, express consent affidavit form, Mr. Melton refused
22  to sign that, stating that he understood the restrictions and
23  the circumstances of what was taking place.
24           He refused to sign that; he was in custody at the
25  time.  Be that he refused to sign temporary -- or the express
```

14

1   consent affidavit notice of revocation I did not issue him a
2   temporary license.
3       Q   Okay.  So just so that I'm clear, your position is
4   that if someone does not sign that express consent form that
5   they will not be issued a temporary permit?
6       A   That is correct.  If they will not sign that form that
7   is explained to me that they -- it's not admitting guilt and
8   it's not admitting anything beyond the fact that they
9   understand why they're -- or what is taking place, and that
10  they have seven days to receive -- or request a hearing.
11      Q   Now Officer Cowan was with you at the time of the
12  arrest, correct?
13      A   She was riding with me as a double unit that morning.
14      Q   And it was Officer Cowan that arrested Mr. Melton two
15  days later for driving under revocation?
16          HEARING OFFICER:  Counsel, excuse me.  That is not
17  part of this hearing.  That may be another matter, a criminal
18  matter, but it's not part of this hearing.
19          MR. SCHUMACHER:  I think -- respectfully, I think it
20  goes to credibility.
21          HEARING OFFICER:  All right.  Continue then.
22      Q   (By Mr. Schumacher)  Okay.  I didn't catch your
23  answer, Officer.
24      A   I stated I was not on duty that day so I would not
25  know if Ms. -- or Officer Cowan did in fact contact and arrest

1  Mr. Melton on that date and time.
2       Q    Okay.  So as you sit here today you're not aware of
3  that fact?
4       A    If you tell me that in fact there was an arrest, then
5  yes I would believe you, because I would assume that there are
6  records of it in our department.  But, no.  I was not on duty
7  that day and I was not involved.
8       Q    Okay.
9            MR. SCHUMACHER:  I have no further questions.
10           HEARING OFFICER:  All right.  Counsel, I just wanna
11 have you look at Exhibit Number 2, and right at the bottom it
12 says, "In order for the temporary permit to be granted it must
13 sign -- be signed by both you, the Respondent, and the police
14 officer."
15           MR. SCHUMACHER:  Oh, yeah.  Yeah.  I'm well, aware of
16 that.  I --
17           HEARING OFFICER:  Okay.  And --
18           MR. SCHUMACHER:  -- (inaudible) is just that that's
19 -- that that's not what the law says.
20           HEARING OFFICER:  Right.  And then on the other part
21 he did get a temporary license five days later.
22           MR. SCHUMACHER:  He did, but that was after he
23 applied at the Department of Motor Vehicles.
24           HEARING OFFICER:  Exactly.  But what the Officer
25 said, if he refused to sign that there could be no temporary

```
 1  permit granted.  The Officer could not give it.  It's right
 2  there on that express affidavit and notice of revocations, it
 3  says right there at the temporary permit.  Do you -- do you
 4  read that?  "This entire notice and order is a temporary permit
 5  which expires on the seventh day of the date of notice.  When
 6  indicated below and when signed by both you and the peace
 7  officer."
 8            MR. SCHUMACHER:  Yeah.  It's clear to me that's what
 9  the form says.
10            HEARING OFFICER:  Okay, thank you.  Okay.  Do you
11  wish to have your client testify?
12            MR. SCHUMACHER:  No.
13            HEARING OFFICER:  Do you wish to present any
14  argument, Counsel?
15            MR. SCHUMACHER:  Just briefly.
16            HEARING OFFICER:  Please.
17            MR. SCHUMACHER:  I believe that the -- the series of
18  events that -- that transpired in this case, it goes to
19  credibility.  I think there's a serious concern regarding the
20  actions of the police department in this case, and so I think
21  I'm at basis the revocation ought not to be withheld.
22            I would like to just emphasize that this notice that
23  -- that we're referring to, the express consent affidavit,
24  notice of revocation is in direct conflict with the statute
25  which states that it shall be issued unless a person is -- a
```

1    temporary permit, that it shall be issues unless a person is
2    currently under a -- currently under a temporary permit and Mr.
3    Melton was not.
4            So the affidavit is -- is wrong and just want to
5    state that for the record, thank you.
6            HEARING OFFICER:  Thank you, Counsel.  I do find
7    there was reason for the Officer to contact Mr. Melton because
8    of the failure to stop at a controlled section.  I do find the
9    Officer had probable cause to believe that Mr. Melton may be
10   driving impaired by alcohol because of the odor of an alcoholic
11   beverage on his breath, bloodshot watery eyes, failure to
12   perform voluntary roadside maneuvers satisfactorily.
13           And the Officer did place him into custody.  Express
14   consent law of Colorado was explained and Mr. Melton did not in
15   anyway choose a test of his breath or his blood.  And I find
16   the credibility of the Officer to be evident and I'm going to
17   hold that this -- the facts do sustain a revocation; that
18   revocation goes into effect and it went into effect I believe
19   in January.  He was told not to drive after January the 10th,
20   2005.  So please do not drive and the revocation will be in
21   effect for a period of two full years of no driving.
22           Thank you, Counsel.  Thank you, Officer.  Hearing's
23   closed.
24           (Whereupon the proceedings were concluded)
25

TRANSCRIBER'S CERTIFICATE

I, Matthew Smith, do hereby certify that I have listened to the recording of the foregoing; further that the foregoing transcript pages 1 through 17, were reduced to typewritten form from a digital recording of the proceedings held February 28, 2006, in this matter; and that the foregoing is an accurate record of the proceedings as above transcribed in this matter on the date set forth.

DATED this 27th day of April, 2006.

Matthew Smith
A/V Tronics, Inc.
600 17th St., Suite 2800
Denver, CO 80202
(303) 634-2295