# EXHIBIT B

**BRUNO**
*REPORTING*
*COMPANY*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-CV-00029-RPM-PAC

---

DEPOSITION OF BUCK MALOY MELTON

OCTOBER 2, 2007

---

BUCK MALOY MELTON,

Plaintiff,

v.

CITY OF GUNNISON, COLORADO; OFFICER RONALD MOORE, individually, and OFFICER GRACE COWAN, individually.

Defendants.

---

APPEARANCES

FOR THE PLAINTIFF: SEAN M. McDERMOTT, ESQ.
McDermott, Hansen & McLaughlin, LLC
1890 Gaylord Street
Denver, Colorado 80206

FOR THE DEFENDANTS: ERIC M. ZIPORIN, ESQ.
Senter Goldfarb & Rice, LLC
1700 Broadway
Suite 1700
Denver, Colorado 80290

*899 Logan St.*
*Suite 208*
*Denver, CO*
*80203*
*303 / 831-1667*
*Fax / 831-4432*

don't know if anybody specifically within the police department gave the directive to maintain this alleged list, correct?

A Correct.

Q Any other reasons upon which you're suing the City of Gunnison other than what we've talked about?

A Aside from that, the other issue is that I was simply refused to do a blow test and the whole DUI situation. I was found not guilty in a trial, but there was obviously some issues with that. From the beginning to the very end of the arrest, eight minutes, two of those were spent at a stoplight. I mean, I was going to jail when he told me that I'm on a list. It wouldn't have mattered what I would have said or done, I was going to jail.

Q Any other reasons why you're suing the City of Gunnison?

A For not being able to drive.

Q Anything else?

A Between the two, no, the DUI and the driving while revoked.

Q Now I want to shift gears and talk to you about your damages. Are you alleging in this lawsuit any type of physical injury associated with these two

contacts with the police?

A No.

Q Are you alleging emotional injury with regard to your contacts on these two evenings -- these two occasions?

A There was some emotional issues. Not quite what I would clarify as a psychological or psychiatric issue, but yeah, there were some issues, and it created problems.

Q Just quickly tell me what those issues are because we're going to talk about them in more detail in a little bit.

A Pretty much what I stated in the interrogatories, you know, it created problems with friends and family. I'm not exactly looked favorably upon when you've had DUI arrests.

Q Any other claim of emotional distress?

A No.

Q What about economic loss, are you claiming economic loss in this case?

A Yes.

Q In what form?

A The fact that I was no longer allowed to drive, that I was threatened with all of these crimes, which, my understanding, would have led to an habitual

driving offense, which was a felony. And I would have gone to jail for a substantial length of time, and that would have dramatically altered my life.

Q But you didn't go to jail, right?

A Aside from being arrested and being put out on bond, no.

Q You had to pay money for the bond, correct?

A Yes.

Q So that's economic loss you're trying to recover in this lawsuit, correct?

A Right.

Q And you had to hire a lawyer, right?

A Right.

Q So that's an economic damage you're trying to recover in this lawsuit?

A Right.

Q Did you lose income as a result of these arrests?

A Yes.

Q How so?

A Simply put, the prospect of going to jail, I had to cease my financial activities. I had to liquidate some accounts. I had to tell several people that I work with that I couldn't look over their

interests, that we had to liquidate accounts and deal with things until this trial was over with.

Q Were you employed at the time of your January 2, 2006 arrest?

A Self-employed.

Q Were you managing personal accounts at that time?

A I have a power of attorney over other accounts.

Q And were you similarly employed two days later?

A Yes.

Q At some point, then, prior to the trial on the DUI case, you indicated to those that you were working for that you couldn't manage their accounts?

A It was after the DUR, because it would have been both of those, as explained to me that that's what would have eventually led to a habitual driving offense. So the driving while revoked was rather integral to that.

Q Are there any other forms of damages that you're claiming in this lawsuit?

A Lost wages, the legal bills, bond. I think that's pretty well it.

Q Now, I want to talk to you a little bit

Page 34

Ms. McGinnis about getting your real estate license and your broker's license?

A We'd been talking about that since I was living in Alamosa.

Q So what was your expectation when you moved to Gunnison with regard to obtaining your license with regard to both real estate and brokerage?

A What was my expectation?

Q Yeah.

A Do the classes and whatever, and you get the license. Go take the test and get it.

Q So you moved there in the summer of 2005, do you know what month that was?

A Not right offhand. It was closer to the fall. I think in August or September. They set up an office, that took a little bit of time. And then Dan and I were pretty much started on it, and then this DUI happened.

Q Is Kelly McGinnis still in Gunnison?

A Yes.

Q Is the name of her business the same?

A Yes.

Q And do you know if this Dan individual is still in Gunnison?

A Yeah, he's a co-owner of the business.

Page 35

Q And at the time of your DUI, you had yet to sign up for the classes you needed to take, correct?

A Correct. So at the time, I was doing other work for the company.

Q What were you doing for the company?

A Just odds and ends. They rent places out, so cleaning places and taking care of places, dealing with the public.

Q Where is that business located in Gunnison?

A They just moved offices again. It's the old florist shop, wherever that is.

Q Where were they at the time of your arrest?

A Down the street, five blocks. It's on Highway 50. It's a street called Tomichi, and I'm not sure of the exact numbers.

Q So five blocks away from your residence at the time?

A No. It was -- you have Tomichi, Highway 50, and then Highway 135 goes to Crested Butte, and I lived across. They had an itty-bitty little office. The florist, I guess, had gone out of business or something to that effect, and they took that place over.

Page 36

Q At the time of your arrest in 2006, how far away was the business from your residence?

A Probably about just less than a mile.

Q So after your arrest in January 2006, did you continue working for Ms. McGinnis?

A Yes. But not long thereafter, I quit.

Q How much longer?

A I'm not real sure. It was kind of an on-off thing, so maybe a couple months.

Q What do you mean "on-off"?

A It wasn't an 8 to 5 job.

Q Was it before your arrest?

A No.

Q So before your arrest, how many hours a week were you working?

A I don't know, 25, maybe.

Q And is that the same after your arrest?

A I kind of tapered off after that for the large part, because it was kind of understood I wouldn't get the real estate license.

Q Why was it understood you wouldn't get the real estate license?

A If you can't travel, you can't do real estate.

Q Well, how did you know that you would no

Page 37

longer be able to travel at the time you quit your job?

A They took my license. It's kind of the basis for why we're here.

Q Well, at the time you quit your job, you did not at that time have a license, correct?

A Correct.

Q Were you awaiting your hearing with the department of revenue?

A No, that's what I'm saying. We had already been through that, so it would have been done.

Q So your hearing with the department of revenue was on February 28, 2006, so you would have quit your job after that date?

A Yes.

Q You knew after your department of revenue hearing that you would not have your license for a two-year period, correct?

A I knew that when I was arrested for the DUI. Although, yes, we were waiting for the DMV hearing.

Q Wasn't that the official proceeding that would determine whether or not you would lose your license or not?

A I question official, but as far as the DMV was concerned.