IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00029-RPM

BUCK MALOY MELTON,

Plaintiff,

v.

CITY OF GUNNISON, COLORADO; OFFICER RONALD MOORE, individually, and
OFFICER GRACE COWAN, individually,

Defendants.

---

## DEFENDANTS' COMBINED MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM BRIEF IN SUPPORT

---

Defendants, **CITY OF GUNNISON**, **COLORADO**, **OFFICER RONALD MOORE**, and **OFFICER GRACE COWAN**, by their attorneys, **ERIC M. ZIPORIN** and **ELLIOT J. SCOTT** of the law firm of **SENTER GOLDFARB & RICE, L.L.C.**, and pursuant to Fed.R.Civ.P. 56, hereby submit their Combined Motion for Summary Judgment and Memorandum Brief in Support.

## I.    STATEMENT OF THE CASE

This case arises out of allegations by Plaintiff that his constitutional rights were violated when he was not issued a temporary driver's permit after being arrested for Driving Under the Influence of Alcohol, and further that his rights were violated when he was stopped and arrested shortly thereafter.  Plaintiff alleges the following claims for relief against the Defendants:  (1) First Claim for Relief – violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 against Defendant Officer Ronald Moore (hereinafter "Officer Moore"); (2) Second Claim

for Relief – violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 against Defendant Officer Grace Cowan (hereinafter "Officer Cowan"); and (3) Third Claim for Relief – violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 against Defendant City of Gunnison, Colorado (hereinafter "the City").   The present motion seeks summary judgment on each of Plaintiff's claims for relief.

## II.      STATEMENT OF THE FACTS

During the morning of January 2, 2006, Officers Moore and Cowan were patrolling Gunnison in a marked patrol car.  Officer Moore, the driver of the car, observed a blue Mazda sedan that failed to stop at the stop sign of a controlled intersection.  From his vantage point, Officer Moore could tell that the car's break lights had never come on, and that it simply proceeded through the intersection without stopping.

Officer Moore initiated a traffic stop by activating his overhead emergency lights. Officers Moore and Cowan exited the patrol car and approached the blue Mazda, which was driven by Plaintiff.  Officer Moore went to the driver's side of the car and asked Plaintiff to roll down his window.  Plaintiff initially did not comply, and later rolled his window down about six inches.   After repeated requests from Officer Moore, Plaintiff eventually fully opened the window.  With the window down, Officer Moore noticed the strong odor of alcohol coming from Plaintiff's vehicle.

Plaintiff appeared confused and uncoordinated in response to Officer Moore's request for his drivers' license and registration.  After shuffling through papers, Plaintiff eventually handed Officer Moore a copy of the vehicle's bill of sale in lieu of registration paperwork.  Plaintiff denied being under the influence of drugs or alcohol, and Officer Moore asked him to step out of

the vehicle.  Officer Moore observed that Plaintiff seemed to lack balance and coordination as he exited the vehicle and walked toward the sidewalk.  Plaintiff's speech was slurred and he appeared to speak with a "thick tongue."

Officer Moore asked Plaintiff to consent to voluntary physical maneuvers to determine whether he might be under the influence of alcohol, and Plaintiff agreed.  Officer Moore determined that Plaintiff failed these tests, whereupon Officer Moore placed Plaintiff under arrest.  Officer Moore then explained the Colorado Express Consent statute concerning chemical testing of blood and breath upon suspicion of driving under the influence and asked Plaintiff to submit to a breath test.  Plaintiff refused all chemical testing.

Plaintiff was then taken to the Gunnison County jail, where his license was surrendered to Officer Moore.  Officer Moore then explained the Colorado Express Consent Affidavit and Notice of Revocation form ("the Express Consent form") to Plaintiff.  The form contains the following language under the heading "Temporary Permit": "This entire notice and order is a temporary permit which expires on the seventh (7th) day after the date of notice when indicated below and when signed by both you and peace officer."

Plaintiff refused to sign the Express Consent form, which Officer Moore noted on the form by writing "In Custody / Refusal" in the blank marked "Signature of Respondent." Consistent with the policy of the Gunnison Police Department and, indeed, with the training given across the state of Colorado, Plaintiff's refusal to sign the form meant that he was not issued a temporary permit by Officer Moore.  Plaintiff posted bond and was released from the jail.  The appearance bond contained several conditions, one of which was to commit no illegal acts.

Two days later, January 4, 2006, Officer Cowan was alone in a patrol car in the afternoon and noticed the same blue Mazda being driven by Plaintiff in Gunnison.  Officer Cowan knew that Plaintiff had not been issued a temporary permit and that he had surrendered his drivers' license.  Therefore, Officer Cowan initiated a traffic stop of Plaintiff's vehicle.  Plaintiff was unable to produce a valid drivers license or temporary permit, and provided Officer Cowan with the Express Consent form that he had refused to sign two days before.  Officer Cowan placed Plaintiff under arrest for driving under restraint.

Plaintiff's claim against Officer Moore arises from the allegation that he should have issued Plaintiff a temporary permit and that failure to do so constituted a violation of the Fourth Amendment.  The claim against Officer Cowan is that she lacked probable cause to stop and arrest Plaintiff on January 4 because Officer Moore should have issued Plaintiff a temporary permit.  And, finally, Plaintiff's claim against the City concerns its alleged failure to provide its officers with adequate training on Express Consent forms and Colorado DUI statutes.

### III.　　STATEMENT OF THE UNDISPUTED FACTS

1.　　On the morning of January 2, 2006, while on patrol in a marked police vehicle, Officer Moore and Officer Cowan observed a blue Mazda hatchback failing to stop at a stop sign.  [Affidavit of Ronald Moore, appended hereto as **Exhibit A** at ¶¶ 1-3; Transcript of Deposition of Grace Cowan, appended hereto as **Exhibit B**, at p. 12, ll. 12-18; Transcript of Proceedings Held February 28, 2006, appended hereto as **Exhibit C**, at p. 8, ll. 1-8].

2.　　The blue Mazda was driven by Plaintiff.  [**Exhibit A** at ¶ 4; **Exhibit B** at p. 11, ll. 17-20; **Exhibit C** at p. 8, ll. 15-16].

3.      Plaintiff admits that he failed to stop at the stop sign, and states that his failure to stop was due to ice on the road.  [Transcript of Deposition of Buck Maloy Melton, appended hereto as **Exhibit D**, at p. 78, ll. 20-21].

4.      Officer Moore initiated a traffic stop of Plaintiff's vehicle.  [**Exhibit A** at ¶ 4; **Exhibit B** at p. 12, ll. 19-20; **Exhibit C** at p. 8, ll. 8-10].

5.      Officer Moore reported that Plaintiff's speech was slurred, that Plaintiff appeared confused, that he failed a horizontal gaze nysagmus test, and that he could not complete roadside maneuvers.  [**Exhibit A** at ¶¶ 6, 8, 11-13; **Exhibit C** at p. 8, ll. 21-25; p. 9, ll. 1-6; p. 10, ll. 18-25; p. 11, ll. 1-5].

6.      Both Officer Moore and Officer Cowan detected an odor of alcohol coming from the vehicle and Plaintiff.  [**Exhibit A** at ¶¶ 5, 10; **Exhibit B** at p. 13, l. 25 – p. 14, l. 2; **Exhibit C** at p. 10, ll. 18-19].

7.      Based on these observations, Officer Moore arrested Plaintiff on suspicion of driving under the influence.  [**Exhibit A** at ¶ 13; **Exhibit B** at p. 14, ll. 19-25; **Exhibit C** at p. 11, ll. 3-5].

8.      Plaintiff refused to submit to a chemical test of his breath.  [**Exhibit A** at ¶13; **Exhibit B** at p. 22, ll. 6-7; **Exhibit D** at p. 118, l. 18 – p. 119, l. 16; Transcript of Criminal Trial, June 2, 2006, appended hereto as **Exhibit E**, at p. 121, ll. 12-24].

9.      Pursuant to Colorado law, Plaintiff's drivers' license was surrendered to Officer Moore.  [**Exhibit A** at ¶ 15].

10.     Plaintiff also refused to sign the Express Consent form issued by the Colorado Department of Revenue.  [**Exhibit A** at ¶ 14; **Exhibit B** at p. 22, ll. 8-9; **Exhibit C** at p. 19-23; **Exhibit D** at p. 121, ll. 23-25].

11.     The Express Consent form in this case reads in part: "This entire document and order is a temporary permit which expires on the seventh (7th) day after the notice when indicated below and when signed by both you and the peace officer."   [Express Consent Affidavit and Notice of Revocation, executed by Officer Ronald Moore, attached with **Exhibit A** as **Attachment 1**].

12.     The Express Consent form also states, under the section regarding the right to request a hearing, that "[a] temporary permit may be issued until the date of your first scheduled hearing."  [**Exhibit A, Attachment 1**].

13.     Under the section entitled "SURRENDER OF DRIVER LICENSE," the Express Consent form states that "[w]hen you surrender your driver license, the officer may issue a temporary permit that will remain in force for seven (7) calendar days after the date of notice." [**Exhibit A, Attachment 1**].

14.     Because Plaintiff refused to sign the Express Consent form, Plaintiff was not issued a temporary permit by Officer Moore.  [**Exhibit A** at ¶ 15].

15.     Later on January 2, 2006, Plaintiff was released from the Gunnison County jail on an appearance bond in the amount of $750.  [**Exhibit A** at ¶ 16; **Exhibit D** at p. 130, ll. 21-25; p. 131, ll. 9-13, 21-25; Appearance Bond signed by Buck Melton (Deposition Exhibit #5), appended hereto as **Exhibit F**].

11.     Among the conditions of the bond was that Plaintiff commit "no illegal acts." [**Exhibit D** at p. 131, ll. 9-13l **Exhibit F**].

12.     On January 2, 2006, Officer Cowan knew that Plaintiff had refused to sign the Express Consent form, that he had not been issued a temporary permit, and that he had been released from the jail on an appearance bond.  [**Exhibit B** at p. 23, ll. 4-7; p. 27, ll. 15-19; p. 28, ll. 2-12; p. 30, ll. 3-5].

13.     On the afternoon of January 4, 2006, Officer Cowan was on patrol in a fully marked police vehicle.  [Affidavit of Grace Cowan, appended hereto as **Exhibit G**, at ¶¶ 1-2].

14.     At approximately 3:25 p.m., she observed Plaintiff driving his blue Mazda in Gunnison.  [**Exhibit G** at ¶ 1].

15.     Believing that Plaintiff did not have on his person a valid drivers' license or driving permit, Officer Cowan initiated a traffic stop.  [**Exhibit G** at ¶¶ 1-4].

16.     A dispatcher for the Gunnison Police Department initially told Officer Cowan that Plaintiff had a valid drivers' license.  [**Exhibit B** at p. 46, ll. 18-25].

17.     Officer Cowan informed dispatch that she believed his license was, in fact, not valid based on her personal observations on January 2, 2006.  [**Exhibit B** at p. 47, ll. 4-6].

18.     Thereafter, the dispatcher confirmed to Officer Cowan that Plaintiff did not have a valid license.  [**Exhibit B** at p. 47, ll. 7-25].

19.     Indeed, when Officer Cowan contacted him, Plaintiff was unable to produce a valid drivers' license and was only in possession of the Express Consent form that he had refused to sign on January 2, 2006.  [**Exhibit G** at ¶ 3].

20.     Officer Cowan placed Plaintiff under arrest.  [**Exhibit G** at ¶ 4].

21.     The training provided by the City regarding the Express Consent form is that, if an arrestee refuses to sign the Express Consent form, a temporary permit is not issued.  [**Exhibit B** at p. 37, ll. 16-25; p. 38, ll. 1-13; p. 42, ll. 1-10].

22.     The City trains its officers in this manner because of the language in the Express Consent Form and the statute's requirement that law enforcement follow the form and format created by the Department of Revenue.  [Transcript of Deposition of Greg Anderson, appended hereto as **Exhibit H**, at p. 38, ll. 22-25; p. 42, ll. 8-14, 19-25; p. 43, ll. 8-17].

23.     Plaintiff eventually attended a hearing before the Department of Revenue regarding the revocation of his drivers' license.  [**Exhibit C**].

24.     At that hearing, Plaintiff's attorney, Jon R. Schumacher, informed the hearing officer that Officer Moore had refused to issue a temporary permit.  [**Exhibit C** at p. 6, ll. 5 – 8].

25.     After explaining the basis for the probable cause for the arrest, on cross-examination Moore testified that he did not issue a temporary permit given the above-referenced language within the notice of revocation and Plaintiff's refusal to sign the notice.  [**Exhibit C** at p. 13, l. 18 – p. 19, l. 10].

26.     In sustaining the license revocation, the hearing officer specifically noted the above-referenced provision within the Express Consent form and confirmed that Moore could not issue a temporary permit given that language.  [**Exhibit C** at p. 15, l. 10 – p. 16, l. 7].

27.     The City's training on the Express Consent form, including the training on issuing temporary permits, is consistent with the training given by the Colorado State Patrol to its officers.  [Affidavit of Trooper Peter Lawrence, appended hereto as **Exhibit I**, at ¶¶ 7, 13].

## IV.   <u>STANDARD OF REVIEW</u>

Summary judgment should be granted where, taking the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *See Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110-11 (10th Cir. 1991).  Upon a motion for summary judgment, the moving party bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to produce evidence creating a genuine issue of material fact to be resolved at trial.  *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

To avoid summary judgment, the non-moving party must present more than "a mere scintilla of evidence."  *Id.*  There must be enough evidence to allow a reasonable jury to find for the non-moving party.  *Id.*  The non-movant "may not rest upon the mere allegations or denials" of the pleadings, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), but must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  Further, "[i]f the [non-movant] fails to present competent evidence to establish every element of [his] claim . . ., entry of summary judgment in favor of the movant is appropriate because the [non-movant] cannot carry [his] burden of proof."  *In re Ribozyme Pharm., Inc.*, 209 F. Supp.2d 1106, 1111 (D. Colo. 2002).

Even if the non-movant identifies a genuine issue of material fact, "a genuine issue must be predicated on a viable legal theory."  *Windon Third Oil & Gas Drilling P'ship v. Federal Deposit Ins. Corp.*, 805 F.2d 342, 346 (10th Cir. 1986); *Holloway v. Pigman*, 884 F.2d 365, 366

(8th Cir. 1989) ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts").

Plaintiff has the burden of demonstrating that there is a genuine issue of material fact to be resolved at trial with respect to each named Defendant in this action.  This motion is filed on behalf of Officers Moore and Cowan and the City, who have each met their initial burden under Fed.R.Civ.P. 56.  Plaintiff must now separately meet his burden as to each Defendant in order for his claims against each individual to survive this Motion.

## V.   ARGUMENT

### A.   INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

#### 1.   Concept and Plaintiff's Burden.

The qualified immunity doctrine shields governmental officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)(citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).  Qualified immunity "not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial."  *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988).  "These burdens include distraction of officials from their governmental responsibilities, the inhibition of discretionary decision making, the deterrence of able people from public service, and the disruptive effects of discovery on governmental operations."  *Hannula v. City of Lakewood*, 907 F.2d 129, 130 (10th Cir. 1990).

"Once the defendant pleads qualified immunity, the burden shifts to the plaintiff to demonstrate (1) the defendant's conduct violated the law, and (2) the relevant law was clearly established when the alleged violation occurred." *Migneault v. Peck*, 158 F.3d 1131, 1139 (10th Cir. 1998)(citing *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997)).  "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Migneault*, 158 F.3d at 1140 (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)).

In order to overcome the defense of qualified immunity, a plaintiff must make a particularized showing that the law is sufficiently clear that the defendant would have known that his or her conduct was unconstitutional.  *See Patrick v. Miller*, 953 F.2d 1240 (10th Cir. 1992).  Although the standard does not require an exact or precise factual correlation between existing law and the circumstances of the case at bar, it does require that the law be reasonably well-developed to inform the state official that his or her conduct would violate the law.  *Hilliard v. City and County of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991).  In order for the law to be sufficiently clear, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

The Supreme Court has further clarified the standard for what constitutes clearly established law.  The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  An officer is not entitled to qualified immunity where there is agreement among courts that "certain conduct is a

constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Saucier*, 533 U.S. at 202.

The Tenth Circuit has recognized a third step to the "traditional" qualified immunity analysis. Specifically, it is incumbent upon the Court to examine "whether, in spite of the fact that the law was clearly established, 'extraordinary circumstances' - such as reliance on the advice of counsel or on a statute – so 'prevented' [the official] from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right." *Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005)(citing *Roska ex rel. v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003)).

"The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 202. "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Id.*; *see also Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1178, 1196 (10th Cir. 2001). For the reasons set forth below, Plaintiff cannot meet any part of his three-part burden with regard to his claims against the individual Defendants and, as such, those Defendants are entitled to qualified immunity. Defendants address in turn whether the individual Defendants violated the Fourth Amendment and whether, assuming a violation, they violated clearly established law.

### 2.    Officer Moore did not violate the Fourth Amendment.

Plaintiff alleges that Officer Moore violated his Fourth Amendment rights when he provided false information that Plaintiff was not entitled to drive following his arrest for DUI on January 2, 2006, and further violated his rights by failing to issue him a temporary driver's

permit as required by C.R.S. § 42-2-126.  [Complaint at ¶¶ 13 – 16, and 28].  That is, Plaintiff argues that Officer Moore's alleged violations of state law amount to a cognizable Fourth Amendment claim.  This argument fails both because the undisputed facts demonstrate that Officer Moore followed Colorado law, and because the Supreme Court has expressly held that §1983 is not a mechanism for redress of state law violations.

Because it is dispositive, Defendants turn first to the legal infirmities in Plaintiff's claim against Officer Moore.  Plaintiff's entire claim against Officer Moore is that he violated the terms of Colorado's law regarding DUI arrests and the issuance of temporary permits.  However, "Section 1983 does not…provide a basis for redressing violations of state law, but only for those violations of *federal* law done under color of state law."  *Jones v. City and County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988)(citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980))(emphasis in original).  Therefore, even if there were facts to establish a violation of Colorado state statute by Officer Moore, that allegation would not create a cognizable federal claim under § 1983.  On that basis alone, Plaintiff's claims against Officer Moore must be dismissed.

Nevertheless, Plaintiff can come forward with no facts to substantiate an allegation that Officer Moore violated the Fourth Amendment or Colorado law.  Plaintiff relies upon the language of C.R.S. § 42-2-126 for the contention that he was unequivocally entitled to a temporary driver's permit after his license was revoked following his arrest for DUI.  [Complaint at ¶ 16].  The statute reads, in relevant part, as follows:

> (5)(a)(I) Whenever a law enforcement officer requests a person to take any test or tests as required by section 42-4-1301.1 and such person refuses to take or to complete or to cooperate in the completing of such test or tests, or whenever such test results are available to the law enforcement officer and such tests show an

alcohol concentration sufficient to warrant revocation under paragraph (a) of subsection (2) of this section, and when the person who is tested or who refuses to take or to complete or to cooperate in the completing of any test or tests is still available to the law enforcement officer, the officer, acting on behalf of the department, shall serve the notice of revocation personally on such person.

\*\*\*

(b) When the law enforcement officer serves the notice of revocation, the officer shall take possession of any driver's license issued by this state or any other state which is held by the person. When the officer takes possession of a valid driver's license issued by this state or any other state, the officer, acting on behalf of the department, shall issue a temporary permit which is valid for seven days after its date of issuance.

(c) A copy of the completed notice of revocation form, a copy of any completed temporary permit form, and any driver's, minor driver's, or temporary driver's license or any instruction permit taken into possession under this section shall be forwarded to the department by the officer along with the affidavit and documents required in subsections (2) and (3) of this section.

(d) The department shall provide forms for notice of revocation and for temporary permits to law enforcement agencies. The department shall establish a format for the affidavits required by this section and shall give notice of such format to all law enforcement agencies which submit affidavits to the department. Such law enforcement agencies shall follow the format determined by the department.

COLO.REV.STAT. § 42-2-126 (2006).

Plaintiff points to subsection (b), which states that an officer "shall issue a temporary permit" to the arrestee and avers that this settles the matter—Officer Moore was required by statute to issue the permit. But Plaintiff's argument reads these terms in complete isolation from the rest of the statute and the regulations promulgated by the Department of Revenue. Notably, pursuant to subsection (d) of the statute, it is the Colorado Department of Revenue that "shall provide forms for notice of revocation and for temporary permits to law enforcement agencies." Subsection (d) goes on to state that these forms are in a format determined by the exclusive province of the Department of Revenue and "law enforcement agencies shall follow the format

determined by the department." The statute requires the department to issue forms, to determine the format of the forms, and further requires that law enforcement agencies follow the forms.

As indicated previously in this Brief, the form created by the Department of Revenue is the Express Consent form and its format does not exactly track the language of the statute. The Express Consent form states, under the section regarding the right to request a hearing, that "[a] temporary permit *may* be issued until the date of your first scheduled hearing." (emphasis added). [**Section III.12**]. Under the section entitled "**SURRENDER OF DRIVER LICENSE**," the notice states that "[w]hen you surrender your driver license, the officer *may* issue a temporary permit that will remain in force for seven (7) calendar days after the date of notice.*" (emphasis added). [**Section III.13**]. And most importantly, the language that is specific to the issuance of a temporary permit reads as follows:

**TEMPORARY PERMIT**

This entire notice and order is a temporary permit which expires on the seventh (7th) day after the date of notice* when indicated below *and when signed by both you and the peace officer*.

(Emphasis added). [**Section III.11**].

It is undisputed that Plaintiff refused to sign the Express Consent form [**Section III.10**], and given the clear language of the notice issued by the Department of Revenue, Officer Moore was not required to issue Plaintiff a temporary permit given his refusal to do so. [**Section III.14**]. Indeed, had Officer Moore issued a temporary permit despite Plaintiff's refusal to sign the form, he would have violated the statute's requirement that law enforcement agencies use the form and format determined by the Department of Revenue.

Officer Moore's decision to not issue the temporary permit given Plaintiff's refusal to sign the Express Consent form is further supported by the findings of the hearing officer from the Department of Revenue during Plaintiff's hearing on the revocation of his drivers' license. [**Section III.23**].  At that hearing, Plaintiff's attorney, Jon R. Schumacher, informed the hearing officer that Officer Moore had refused to issue a temporary permit.  [**Section III.24**].  After explaining the basis for the probable cause for the arrest, on cross-examination Moore testified that he did not issue a temporary permit given the above-referenced language within the notice of revocation and Plaintiff's refusal to sign the notice.  [**Section III.25**].  In sustaining the license revocation, the hearing officer specifically noted the above-referenced provision within the notice of revocation and confirmed that Moore could not issue a temporary permit given that language.  [**Section III.26**].  Since even the Department of Revenue found that Officer's Moore's actions were proper, his actions were reasonable.

Accordingly, since Moore did not provide false information by informing Plaintiff that he was not entitled to a temporary permit given his failure to sign the Express Consent form, and he did he violate the law by not issuing the permit, Moore did not violate Plaintiff's Fourth Amendment rights.

3.     <u>Officer Moore did not violate clearly established law.</u>

Even if Plaintiff could establish that Officer Moore violated Colorado state law by failing to issue a temporary permit, and further assuming that such a violation could be construed as an unlawful seizure under the Fourth Amendment, Officer Moore is entitled to qualified immunity. There is no clearly established law in the Tenth Circuit or United States Supreme Court to suggest that an officer's failure to issue a temporary drivers' permit, where there is ambiguity

and an apparent conflict in the statute and state agency forms, amounts to a violation of the Fourth Amendment.   In fact, courts have held that where determination of a constitutional question turns on a close question of state law, qualified immunity is appropriate.  *See, e.g., Erlich v. Town of Glastonbury*, 348 F.3d 48, 58-62 (2d Cir. 2003); *Hudson v. Hall*, 231 F.3d 1289, 1295-1296 (11th Cir. 2000).

And in the instant case, Plaintiff's contention is apparently that the only way Officer Moore could have avoided civil liability would have been for him to ignore pertinent language in the Express Consent form requiring Plaintiff's signature.  Plaintiff incorrectly claims that Officer Moore was under a constitutional obligation to interpret the Colorado statute for himself, resolve the apparent conflict in the form and the statute himself, discard the form he was obligated to use, and craft some new or altered form that in Plaintiff's judgment (as opposed to Officer Moore's, the Colorado State Patrol's [**Section III.27**], and the Colorado Department of Revenue's judgment) would give the statute full effect.  By its own terms, Plaintiff's argument for Officer Moore's liability establishes that the law was unclear and that Officer Moore is entitled to qualified immunity.

4.   <u>Officer Cowan did not violate the Fourth Amendment.</u>

Presumably, Plaintiff's argument against Officer Cowan is that she had insufficient reasonable suspicion to stop Plaintiff's vehicle on January 4, 2006 and that she did not have probable cause to arrest Plaintiff thereafter.

"[A] traffic stop would be 'valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.'"  *United States v. Bustillos-Munoz*, 235

F.3d 505, 512 (10th Cir. 2000).  The Tenth Circuit has also held that "a traffic stop is reasonable under the Fourth Amendment at its inception if the officer has…a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction."  *United States v. Ramstad*, 308 F.3d 1139, 1144 (10th Cir. 2002).  Here, Plaintiff alleges that Officer Cowan's stop of Plaintiff was improper because she could not have ruled out the possibility that Plaintiff had gone to the Department of Motor Vehicles between his arrest and January 4 to obtain a temporary permit.  *See* [Transcript of Deposition of Gary Pirosko, appended hereto as **Exhibit J**, at p. 32, ll. 18-22].  In essence, the allegation is that Officer Cowan's information on Plaintiff was stale.

But it is undisputed that Officer Cowan observed Plaintiff driving two days after he had been arrested for driving under the influence; she had personal knowledge that his drivers' license had been surrendered and that he had not been issued a temporary permit.  [**Section III.12**].  Therefore, Officer Cowan had reasonable suspicion to stop Plaintiff's vehicle when she saw him driving on January 4.  *See United States v. Cortez-Galaviz*, 495 F.3d 1203, 1208 (10th Cir. 2007); *State of Hawai'i v. Spillner*, ___ P.3d ___, 2007 WL 4472511 (Haw. 2007).  In the *Cortez-Galaviz* case, the Tenth Circuit held that an officer's reliance on twenty day old information from a computer that the driver did not have insurance did not render the investigatory stop unreasonable.  *Cortez-Galaviz*, 495 F.4d at 1208.  Indeed, the Tenth Circuit noted that "when the legal infraction at issue typically wears on for days or weeks or months (like, say, driving without a license or appropriate emissions and safety certifications), rather than concludes quickly (like, say, jaywalking or mugging), the timeliness of the information on which the government relies to effect an investigative detention recedes in importance."  *Id*. at

1209 (internal quotation omitted); *see also United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004); *United States v. Pierre*, 484 F.3d 75, 84 (1st Cir. 2007).

It is true, but irrelevant to the probable cause inquiry, that Officer Cowan initially heard from the dispatcher during the stop that Plaintiff's license came back valid on the computer. [**Section III.16**].   Given the proximity of Plaintiff's DUI revocation, Officer Cowan rightly relied on her personal knowledge of the status of Plaintiff's license in formulating reasonable suspicion.  Indeed, "reasonable suspicion could still warrant effecting a traffic stop of the driver, despite the possibility of innocence, because '[a] determination that reasonable suspicion exists need not rule out the possibility of innocent conduct."  *Spillner*, *supra* (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)).   Officer Cowan had a legally sufficient amount of information to form the basis for a reasonable suspicion that Plaintiff was driving his vehicle without a valid license or temporary permit on his person.  Furthermore, it is undisputed that, upon further investigation, the dispatcher informed Officer Cowan that the computer database indicated that Plaintiff's license was not valid.[1]  [**Section III.18**].

And, as it turned out, Plaintiff did not have a valid drivers' license or temporary permit on his person on January 4.  [**Section III.19**].   There is no question that failure to have valid license or permit in one's possession while driving a car violates Colorado law.  *See, e.g.,* COLO.REV.STAT. § 42-2-101 (2006).[2]  Plaintiff alleges that Officer Cowan was nevertheless wrong to arrest Plaintiff for driving under restraint, because technically his license had been

---

[1] It is also noteworthy that courts around the nation have included dispatchers in the "collective knowledge doctrine," which is also known as the "fellow officer rule."  *See United States v. Fernandez-Castillo*, 324 F.3d 1114, 1118 (9th Cir. 2003); *United States v. Kaplansky*, 42 F.3d 320, 327 (6th Cir. 1994); *United States v. Cutchin*, 956 F.2d 1216, 1217-18 (D.C. Cir. 1992).

[2] "No person who has been issued a currently valid driver's license or minor driver's license or an instruction permit shall operate a motor vehicle upon a highway in this state without having such license or permit in such person's immediate possession."  Colo.Rev.Stat. § 42-2-101(5).

merely surrendered, not restrained by the Department of Revenue.  That is, Plaintiff asserts that he was in fact innocent of driving under restraint.  But Plaintiff's guilt or innocence is simply irrelevant in the probable cause inquiry.  *Arvizu*, 534 U.S. at 277.  The only question before the Court is whether Officer Cowan had probable cause to make the arrest.  *Id*.

The relevant statute, C.R.S. § 42-2-138(1)(a), provides that it is a crime for a person to drive in Colorado with knowledge that he "is under restraint for any reason."  The statute defines "restraint" as any "denial, revocation, or suspension of a person's license or privilege to drive a motor vehicle."  COLO.REV.STAT. § 42-2-138(4)(b).  It is undisputed that Officer Cowan knew that Plaintiff's driving privilege was restrained: he had surrendered his drivers' license and had not been issued a temporary permit.  [**Section III.12**].  Though Plaintiff may argue that this knowledge is insufficient to sustain a conviction under the statute, there can be no dispute that, as a matter of law, the facts known to Officer Cowan created probable cause that a crime had been committed.

However, the outcome of this state law analysis is of little importance.  *See Davenpeck v. Alford*, 543 U.S. 146, 153 (2004) (ruling that, because the probable cause inquiry is objective, an officer's "subjective reason for making an arrest need not be the criminal offense as to which the known facts provide probable cause").  The sole inquiry when evaluating the constitutionality of a warrantless arrest is whether there was "probable cause to believe that a criminal offense has been or is being committed."  *Davenpeck*, 543 U.S. at 152.

In the instant case, it is undisputed that a reasonable officer in Officer Cowan's position would have had probable cause to arrest Plaintiff for violating the terms of his appearance bond.  It is undisputed that on January 2, 2006 Plaintiff had agreed to release on an appearance bond

that required him to commit no illegal acts.   [**Section III.15-16**].   Because he committed an

illegal act by driving without a drivers' license or permit, Plaintiff violated the terms of his bond.

Violation of the terms of the bond provided an objectively valid probable cause for arrest,

independent of the state law dispute over whether it was reasonable to believe that Plaintiff's

license was in fact valid or in fact restrained on January 4, 2006.  The statute, C.R.S. § 18-8-

212(1), states that, where a person is "released on bail bond of whatever kind," it is a crime to

"knowingly violate[] the conditions of [a] bail bond."  As such, given Plaintiff's clear violation

of a bond condition, Officer Cowan's arrest of Plaintiff was supported by probable cause and did

not violate the Fourth Amendment.

Finally, to the extent that Plaintiff would attempt to hold Officer Cowan responsible for

Officer Moore's decision not to issue a temporary permit (or some other alleged violation of

state law by Officer Moore), Defendants incorporate by reference the analysis on those issues

stated above.

### 5.   Officer Cowan did not violate clearly established law.

Plaintiff's arguments that Officer Cowan violated the Fourth Amendment depend on

close questions of state law.  First, Plaintiff alleges that Officer Cowan should have known that,

as a matter of Colorado law and agency practice, Plaintiff's drivers' license was fully valid,

despite the fact that it was not on his person, had been surrendered pursuant to a DUI arrest, had

not been replaced with a temporary permit, and ultimately came back as not valid on the police

dispatch computer.  Second, Plaintiff argues that Officer Cowan's arrest of Plaintiff was contrary

to state law because Plaintiff was not technically under suspension on January 4.  Even if these

interpretations of state law are correct, the *federal* law on the Fourth Amendment was not clearly

established that, in the situation Officer Cowan confronted, her conduct was prohibited.  She is therefore entitled to qualified immunity.

        6.     "Extraordinary Circumstances."

Should the Court find that the law was clearly established in favor of Plaintiff, "extraordinary circumstances" prevented Officers Moore and Cowan from knowing that their conduct was unconstitutional.  Each officer relied in good faith upon the mandate in the Express Consent form which directed them not to issue a temporary permit unless Plaintiff signed the notice.  Each officer relied on the plain language of the statute that gave power exclusively to the Department of Revenue to create the form and its format and provide it to law enforcement. Finally, each officer relied upon the plain language of the statute that required them to use the form and format created by the Department of Revenue.  Accordingly, these Defendants are entitled to qualified immunity since they should not be imputed with knowledge of a clearly established right.  *See Lawrence*, *supra*, 406 F.3d at 1230.

**B.**    **THE CITY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FOURTH AMENDMENT *MONELL* CLAIM**

With respect to Plaintiffs' municipal liability claim against the City, Plaintiffs have the burden of proving (1) an underlying constitutional violation by Officers Moore and/or Cowan and (2) a municipal policy or custom that caused Plaintiff's alleged injuries.  *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)); *Williams v. City and County of Denver*, 99 F.3d 1009, 1018 (10th Cir. 1996).  It is not enough for a plaintiff to identify conduct attributable to the municipality; the plaintiff must demonstrate that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Brown*, 520 U.S. at 404

(emphasis in original). Likewise, Plaintiff must be able to prove that the failure to train, supervise, discipline, or properly hire reflects a <u>deliberate or conscious choice</u> by a municipality, in other words, a policy. *See Canton v. Harris*, 489 U.S. 378, 389 (1989) (emphasis added). A municipality acts with "deliberate indifference" if it recklessly disregards a risk of harm of which it is aware. *See Despain v. Uphoff*, 264 F.3d 965, 972 (10th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 836-837 (1994)). Plaintiff cannot meet this burden.

First, as demonstrated above, Plaintiff cannot demonstrate any underlying violation of the Fourth Amendment by Officers Cowan and Moore. Second, there is no evidence in the record of constitutionally inadequate training or supervision. Even if Plaintiff could establish a constitutional violation by either Moore or Cowan, there is no evidence suggesting that the City's training and supervision regarding DUI arrests was the result of "reckless disregard." In fact, it is undisputed that the City's training on DUI arrests and the Express Consent form is based on the plain language of the statute. Law enforcement agencies are required by the statute use the form and format created by the Department of Revenue. Though Plaintiff may be correct that the Express Consent form and one subsection of the statute appear to conflict, it is hardly "reckless disregard" for the City to follow the statute's command to use the forms created by the authoritative state agency.

It is apparent that the City's reading of the statute and the Express Consent form is not only a reasonable reconciliation of the differing language, but it is also consistent with the training given by the Colorado State Patrol. [**Section III.27**]. It is further undisputed that the Department of Revenue hearing officer charged with enforcing the statute in this case found Officer Moore's conduct to be proper. [**Section III.23-26**]. These facts establish that the City's

training and supervision was reckless or intentionally unlawful.  The City could not have been on notice that its training and supervision on the DUI/temporary permit issues was inadequate where it complied with the Department of Revenue forms and, in fact, Officer's Moore's conduct was deemed proper in this case by the Department.  There is simply no evidence in the record to suggest that the City's training, policies, and supervision violate the Fourth Amendment.

Because Plaintiffs have come forward with no evidence to support a claim against the City under 42 U.S.C. § 1983, it is entitled to summary judgment.

## VI.   CONCLUSION

For the reasons stated above, Defendants are entitled to summary judgment on all of Plaintiff's claims.  There is simply no evidence to create a triable issue of fact on whether Officers Moore and Cowan violated the Fourth Amendment.  Nor can Plaintiff come forward with any evidence that the City acted with deliberate indifference to known constitutional violations.

Respectfully submitted,


s/ Eric M. Ziporin
*Eric M. Ziporin*


s/ Elliot J. Scott
*Elliot J. Scott*
Senter Goldfarb & Rice, L.L.C.
1700 Broadway, Suite 1700
Denver, CO 80290
Telephone:  (303) 320-0509
FAX:  (303) 320-0210
E-mail: eziporin@sgrllc.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

     **I HEREBY CERTIFY** that on this _____ day of January, 2008, a true and correct copy of the above and foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:


Sean McDermott, Esq.
smcdermott@mhmlawfirm.com


                              s/ Barbara A. Ortell _____

00295611.DOC