EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00029-RPM

BUCK MALOY MELTON,

Plaintiff,

v.

CITY OF GUNNISON, COLORADO; OFFICER RONALD MOORE, individually, and OFFICER GRACE COWAN, individually,

Defendants.

## AFFIDAVIT OF RONALD MOORE

Affiant, **RONALD MOORE**, after being duly sworn, states as follows:

1. On January 2, 2006, I was an on-duty officer with the Gunnison Police Department, and I have personal knowledge of the facts set forth below.

2. That morning I was patrolling in a fully marked Gunnison Police vehicle. Officer Grace Cowan rode with me as a passenger and back-up officer.

3. At about 8:22 a.m., near the 200 block of North Wisconsin St., I observed a blue Mazda traveling eastbound on West Virginia Avenue. The Mazda failed to stop at the controlled intersection of North Wisconsin and West Virginia.

4. I activated my overhead emergency lights and initiated a traffic stop of the car. The driver of the vehicle was identified as Buck Melton. I asked Mr. Melton to roll down his window, but he was reluctant to do so and only rolled down the window about six inches.

5.  I asked Mr. Melton for his drivers' license, registration, and proof of insurance, and while doing so, I detected the odor of alcohol coming from the inside of the vehicle. I asked Mr. Melton to roll with window down all the way and he did so, but only after having to ask him several times.

6.  Mr. Melton was displaying a lack of dexterity as he fumbled around his vehicle's glove box looking through paperwork. Mr. Melton also had slurred thick tongued speech and could not follow simple instructions or answer questions. I noticed that his eyes were red and bloodshot.

7.  Mr. Melton handed me his drivers license and a bill of sale for the vehicle, stating that the bill of sale was in fact the registration. I could see the registration in the glovebox and the insurance information that was sitting in Mr. Melton's lap, and I asked him to provide those to me.

8.  I asked Mr. Melton where he was going, and he said he was going to a friend's house, though he did not know the address. I asked him where he lived, and at first all he said was that he lived nearby. I again asked him for his address and he stated it was on Tomichi Avenue. For the third time, I asked Mr. Melton where he lived, and all he told me were the numbers "2" and "6."

9.  I told Mr. Melton why I had contacted him—that he had failed to stop at the stop sign at the intersection. He told me that he slid through the intersection because of ice on the street.

10.  I asked Mr. Melton if he had consumed any alcohol and if he was under the influence of any drug or medication. He denied being under the influence. I then asked Mr.

2

Melton to exit the vehicle. As he did so, I could tell that he was having a hard time keeping his balance. Once out of the vehicle, I detected the odor of alcohol on Mr. Melton's breath.

11.    I asked Mr. Melton if he would cooperate with a series of voluntary physical maneuvers to determine his ability to safely operate his vehicle. Mr. Melton stated that he did not understand what I was asking. I explained to him my observations and my belief that he was under the influence of alcohol or drugs and that I was concerned about this ability to operate the vehicle. I explained the maneuvers six times, and eventually he seemed to understand what I was asking and he consented to the maneuvers.

12.    I first administered a horizontal gaze nystagmus test. Mr. Melton displayed a lack of smooth pursuit in both his left and right eye. Mr. Melton displayed distinct nystagmus at maximum deviation in both is left and right eye. Mr. Melton displayed an onset of nystagmus before 45 degrees in both his left and right eye. The onset began almost immediately in both eyes. My training indicates that this are indicia of intoxication.

13.    After Mr. Melton failed to satisfactorily complete the remaineder of the roadside maneuvers, I placed him under arrest for further investigation of driving while under the influence of alcohol. I explained Colorado's express consent statute and asked that he submit to chemical testing to determine whether he was under the influence of alcohol. Mr. Melton refused all testing of his breath or blood.

14.    I transported Mr. Melton to the Gunnison County Jail. At the jail I explained to Mr. Melton the contents of the Colorado Express Consent Affidavit and Notice of Revocation form provided by the Colorado Department of Revenue. Mr. Melton refused to sign the form where required. I therefore wrote "IN CUSTODY / REFUSAL" in the blank for his signature

and executed the affidavit. A true and accurate copy of this affidavit is appended hereto as **Attachment 1**. **Attachment 1** is document kept by the Gunnison Police Department, which is authorized to keep such records.

15. Because he refused to sign **Attachment 1**, I explained to Mr. Melton that I could not issue a temporary permit to drive. I explained that his drivers' license had been surrendered and that he could not drive.

16. Mr. Melton was later released after he posted a $750 appearance bond which required, among other things, that Mr. Melton commit no illegal acts.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Ronald Moore

STATE OF              )
                             )ss.
COUNTY OF        )

SUBSCRIBED AND SWORN to me before this 29 day of January, 2008, by Ronald Moore.

By _____
Notary Public
My Commission Expires: 4-9-11

OFFICIAL SEAL
KELLI A. LITZ
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires April 9, 2011

5