**EXHIBIT C**

1  STATE OF COLORADO, DEPARTMENT OF REVENUE, MOTOR VEHICLE DIVISION

2  Case No. 06-3488

3  _____

4  TRANSCRIPT OF PROCEEDINGS HELD FEBRUARY 28, 2006

5  _____

6  STATE OF COLORADO,

7          Petitioner,

8  v.

9  BUCK MALOY MELTON,

10         Respondent.
   _____

11         The above-entitled matter commenced on February 28,

12  2006 for Hearing before ROBERT LEIB, a Hearing Officer for the

13  Department of Revenue.

14         This is a complete transcript of the proceedings

15  recorded in this case on the above date.

16

17     APPEARANCES:

18         FOR THE RESPONDENT:   JON R. SCHUMACHER, ESQ.

19

20

21

22

23

24

25

**A/V▾ TRONICS, INC.**
Electronic Court Reporting & Transcription
Denver, CO * Phoenix, AZ * Tucson, AZ
(303) 634-2295

```
 1                            INDEX

 2                       Direct  Cross  Redirect  Recross

 3   WITNESSES:

 4   Officer Moore
       (Testimony)              7
 5     (By Mr. Schumacher)             11

 6   EXHIBITS:                              Offered   Received
     Petitioner's Exhibit A                   5
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**A/V▾ TRONICS, INC.**
Electronic Court Reporting & Transcription
Denver, CO * Phoenix, AZ * Tucson, AZ
(303) 634-2295

3

1                    February 28, 2006

2        HEARING OFFICER:  Good afternoon.  My name is Robert

3    Leib, I'm a hearing officer for the Department of Revenue for

4    the State of Colorado, and this is case number 063488.  For the

5    record, Mr. Melton, will you please state your name and

6    address.

7        THE RESPONDENT:  Buck Maloy Melton, 1206 West

8    Tomechee (phonetic) Number 1, Gunnison, Colorado.

9        HEARING OFFICER:  Thank you, sir.  Representing you

10   is counsel, Counsel, may I please have your name and

11   registration number.

12       MR. SCHUMACHER:  Yes.  It's John Schumacher,

13   registration number 24780.

14       HEARING OFFICER:  Thank you.  And also present by

15   telephone is the arresting officer.  Officer, may I please have

16   your name and ID number.

17       MR. MOORE:  My name is Ronald Moore, I'm employed by

18   the City of Gunnison Police Department.  My DSN is 2013.

19       HEARING OFFICER:  Thank you.  This hearing is held

20   under the authority of Colorado revised Statute 42-2-126.  The

21   usual issue at a hearing such as this is whether by a greater

22   weight of the evidence a driver is found to be driving a motor

23   vehicle in the State of Colorado when the amount of alcohol in

24   his blood is 0.08 or more grams of alcohol per 210 liters of

25   breath, or 100 milliliters of blood, at the time of driving or

4

1    within two hours thereafter.

2          In order to determine the breath alcohol content or

3    blood alcohol content of a driver, there's another law in

4    Colorado called Express Consent law, which states that any

5    driver thought to be driving impaired by alcohol or some

6    controlled substance must choose a chemical test of his breath

7    or blood, or submit to a urine test if so ordered by the

8    officer.

9          If a person refuses to take a chemical test, like

10   saying "No, I'm not going to take any test," or refuses to

11   cooperate in the completion of a test by saying, "Oh, I'll take

12   a breath test," but then refuses to blow into the Intoxilyzer,

13   or does not cooperate so the test can be done within two hours

14   of the time of driving, and that would be explained by a person

15   saying, "Well, I don't know whether I want a breath test or a

16   blood test," and he is "hymming and hawing" and finally makes

17   his selection, but the test cannot be completed within two

18   hours of the time of driving, the officer can site a refusal.

19         And that is the issue at this hearing.  Because of a

20   prior revocation for a refusal, if there -- the facts sustain a

21   revocation for a refusal at this hearing, that revocation will

22   go into effect for a period of two full years of no driving.

23   If the facts do not sustain a revocation the case will be

24   dismissed.

25         Now I have a packet of various documents presumably

5

```
 1    submitted by the arresting officer.  I'm labeling these

 2    documents collectively as Exhibit A.

 3                Counsel, have you had a chance to review those

 4    documents?

 5                MR. SCHUMACHER:  I have.  And just to confirm we did

 6    request a copy of the express consent packet from the

 7    Department.

 8                HEARING OFFICER:  Uh-huh.

 9                MR. SCHUMACHER:  The Division, we did receive those.

10    It's fairly short, it contains the express consent affidavit

11    and notice of revocation.  The incident report, a copy of the

12    summons, and essentially a -- well, an arrest report is the

13    last document in that series of documents.

14                HEARING OFFICER:  Yes.  That's correct.  And there's

15    nine pages?

16                MR. SCHUMACHER:  Yes.

17                HEARING OFFICER:  Okay, good.  Do you have any

18    objection to their introduction into evidence?

19                MR. SCHUMACHER:  No, I don't.  But I would like to

20    make a preliminary record on an issue when you're ready.

21                HEARING OFFICER:  All right.  You may do that now,

22    Counsel.

23                MR. SCHUMACHER:  Okay.  Well, before we begin I need

24    to make an offer of proof.  Since Officer Moore is here under

25    my subpoena --
```

6

1        HEARING OFFICER:  Uh-huh.

2        MR. SCHUMACHER:  -- I think I'm ethically obligated

3   to advise him of his Fifth Amendment right against

4   self-incrimination if he so chooses to testify in this matter.

5   In this case, and here's the offer of proof, Mr. Melton was

6   refused following his arrest a temporary permit even though he

7   surrendered his license, and even though he had a valid license

8   at the time.

9        This is significant because two days after this

10  arrest on January 4th of 2006, Mr. Melton was detained and

11  arrested by the officer who was a passenger at the time of the

12  previous arrest two days earlier with Gunnison Police

13  Department on the basis that Mr. Melton's driving privileges

14  were revoked.  He was arrested and jailed for driving under

15  revocation.

16        The -- I listened to the dispatch tape regarding that

17  subsequent arrest for driving under revocation.  Officer Cowan

18  was the officer who called it in.  She confirmed -- actually

19  dispatch confirmed that Mr. Melton's license was in fact valid

20  at the time of that subsequent arrest.  Nevertheless he was, as

21  I indicated, arrested and jailed and had to post a $10,000

22  bond.  And so that's obviously a major problem.

23        And I bring that up because this is obviously that

24  action -- well, first of all not issuing the temporary permit

25  to begin with and then the subsequent arrest by the same

1   department for driving under revocation is State action.  And

2   any testimony regarding it today, could subject the officer

3   potentially to federal prosecution for official misconduct or

4   even conspiracy.  And so I think it's again my ethical duty to

5   advise the Officer of that.

6          HEARING OFFICER:  All right.  But you subpoenaed the

7   officer, is that correct?

8          MR. SCHUMACHER:  That's correct.

9          HEARING OFFICER:  All right.  Officer, do you still

10  wish to testify?

11         MR. MOORE:  Yes, I do.

12         HEARING OFFICER:  Thank you.  So we will continue

13  then, Counsel.  We'll -- I'll put the Officer under oath.

14                         OFFICER MOORE

15  called as a witness on behalf of the Petitioner, having been

16  previously sworn, did testify upon his oath as follows:

17                         TESTIMONY

18         HEARING OFFICER:  Would you please present the

19  allegations of the State.  You may refer to your documents but

20  please do not read from them verbatim.

21         THE WITNESS:  All right.

22         HEARING OFFICER:  Thank you.

23         THE WITNESS:  First of all I'm employed by the City

24  of Denison as a police officer.  On the day of January 2nd,

25  2006 approximately 8:22 a.m. I was on duty and I was working

8

1   day shift.   I was on routine patrol in the 200 block of North

2   Wisconsin Street traveling southbound at the time.

3          At that time, approximately 8:22 a.m. I observed a

4   blue Mazda traveling eastbound in the 200 block of Virginia

5   Avenue.   As the vehicle approached the intersection which is

6   controlled by a four-way stop of Virginia and Wisconsin, I

7   observed that the vehicle failed to stop as required by law and

8   proceed through the intersection.   I initiated my emergency

9   overhead lights and contacted the vehicle in the 100 block of

10   West Virginia Avenue.

11          I approached the vehicle and observed the driver, who

12   only rolled the window down approximately six inches.   I asked

13   the driver for his license, registration and proof of

14   insurance.   At this time I could detect the odor of an unknown

15   alcoholic beverage coming within the vehicle.   I asked the

16   driver, identified as Mr. Buck Melton, to roll the window all

17   the way down so that we could properly speak to each other, and

18   so that I could get these items I requested.

19          Mr. Melton was reluctant to roll the window down and

20   I had to ask him several times before he did roll that window

21   down.   I observed that Mr. Buck Melton's actions were showing a

22   lack of dexterity as he basically fumbled through the glove box

23   attempting to get the items I'd request, being the driver's

24   license, registration and proof of insurance.

25          I observed that Mr. Melton had slurred thick tongue

9

1   speech and that he could not follow simple instructions or

2   answer questions as I spoke to him.  I also observed that Mr.

3   Buck Melton's eyes were red and bloodshot.  After providing me

4   with his driver's license Mr. Melton provided me with a bill of

5   sale for the vehicle stating to me that that was in fact his

6   registration.

7        I had already observed that the registration to the

8   vehicle was in fact laying in the glove box on top of the

9   paperwork he had just went through.  I gave the bill of sale

10  back to Mr. Melton, asked him for the insurance card which I

11  could see laying on his lap.  Mr. Melton gave me that

12  information.

13       I asked Mr. Melton where he was traveling to and

14  where he was coming from.  He stated that he was going to a

15  friend's house.  I asked him where his friend lived and he

16  could not tell me a street or direction.  I asked Mr. Melton

17  where he was coming from again, he said that he was coming from

18  his home.  I asked him where his address was and he told me

19  that it was nearby.  I asked him again for the address, he

20  stated that it was on Tomechee Avenue.  The third time I asked

21  Mr. Melton for his address he stated the numbers two and number

22  six and then Mr. Melton looked away from me and proceeded to do

23  nothing.

24       I explained to Mr. Melton the reason for the contact,

25  stating that I observed him failing to stop as required to do,

10

1  at the controlled intersection.  Mr. Melton told me that he had

2  attempted to stop, but then he had (inaudible) slipped through

3  the intersection.  And I explained to Mr. Melton that I never

4  at the time did I see the brake lights come on, on the vehicle.

5  I did not observe any notion of the vehicle slowing down, be a

6  dipping, compacting of the springs, et cetera.  And that Mr.

7  Melton did not appear to skid at any time.  Basically he

8  (inaudible) rate of motion or speed that I'd observed.

9       Mr. Melton was asked if he had been drinking.  Mr.

10 Melton said that he had not been drinking.  I asked Mr. Melton

11 if he was also under the influence of any drugs or medications

12 at the time.  Mr. Melton told me that he was not under the

13 influence of any drugs or medication.

14      I explained to him my observations and I asked him to

15 step out of the vehicle to speak to me.  Mr. Melton displayed a

16 lack of balance as he exited his vehicle and I had him walk to

17 the sidewalk so as not to be in the street.

18      I was able to detect the odor of an unknown alcoholic

19 breath coming from Mr. Melton's breath -- or his breath outside

20 of the vehicle.  Mr. Melton was asked if he would cooperate

21 with a series of voluntarily physical maneuvers to determine

22 his ability to safely operate his vehicle.  He stated that he

23 did not understand what I was asking.  I had to explain this to

24 him several times including my observations and why I believed

25 that he was under the influence of alcoholic drugs.

11

```
 1          Eventually Mr. Melton did consent to physical
 2   maneuvers, which I administered and to which Mr. Melton
 3   subsequently failed to satisfactorily complete.  I placed Mr.
 4   Melton under arrest for further investigation for driving while
 5   under the influence of alcohol at 8:36 a.m.
 6          I explained to Mr. Melton Colorado express consent
 7   and I asked him if he would chose a chemical test of his breath
 8   or blood.  Mr. Melton refused all tests in saying that he would
 9   not cooperate.
10          Mr. Melton was transported to the Gunnison County
11   Jail where he was turned over to the jail for violations of
12   driving a vehicle while under the influence of alcohol.
13          HEARING OFFICER:  All right.  Counsel, would you like
14   to cross-examine the Officer?
15          MR. SCHUMACHER:  Yes, I would.
16          HEARING OFFICER:  Please.
17                       CROSS-EXAMINATION
18   BY MR. SCHUMACHER:
19      Q    Officer Moore, I think you testified just a moment ago
20   that Mr. Melton had only rolled down his window part of the
21   way, I think six inches or so; is that correct?
22      A    Yes, I did.
23      Q    Okay.  Now this was on the 2nd of January, correct?
24      A    Yes, it was.
25      Q    Okay.  It's pretty cold outside, especially in
```

12

```
 1   Gunnison, correct?
 2       A    That it is.
 3       Q    Okay.  So if somebody rolled down their window part
 4   way that's not by definition an evasive action, is it?
 5       A    It's not by definition an evasive action.  It makes it
 6   very hard for me to receive the documents I asked for and to
 7   conduct an investigation, contact with that subject.
 8       Q    All right.  I just wanted to make sure you weren't
 9   implying that that was evasive.
10       A    No.
11       Q    Okay.  Now it's fairly common in Gunnison,
12   particularly in January, for roads to be icy for a fairly
13   substantial period of time; would you agree with that?
14       A    Yes, it is.
15       Q    Okay.  And oftentimes it can be hard to stop, even at
16   controlled intersections; would you agree with that?
17       A    It does happen.
18       Q    Okay.  Now you indicated that you couldn't see any
19   brake lights go on in Mr. Melton's vehicle, correct?
20       A    I did not observe any brake lights from the car.
21       Q    Okay.  You're aware, aren't you, that his vehicle is a
22   stick-shift and downshifting will slow down his vehicle?
23       A    Yes.  I do remember that it was a stick.
24       Q    Okay.  So -- well, when you approached Mr. Melton's
25   vehicle did you tell Mr. Melton or -- let me -- strike that.
```

13

1    Didn't you tell Mr. Melton when you approached his vehicle,

2    "Oh, you're Buck, we've been looking for you?"

3        A    I have never had any contact with Mr. Melton in the

4    past, nor was there any reason to have contact with Mr. Melton

5    besides the failure to stop at the controlled intersection of

6    Wisconsin and Virginia.

7        Q    Okay.  So you never told Mr. Melton that you -- that

8    the Department had been looking for him?

9        A    There was no reason for the Department to be looking

10   at the time, I've had no contact with him.  So, no, I did not

11   say that.

12       Q    You didn't say that, okay.  Now at the time of his

13   arrest for DUI he had a valid license, correct?

14       A    That he did.

15       Q    Okay.  Yet you refused to issue him a temporary

16   permit, correct?

17       A    That I did.

18       Q    Okay.  And what was your basis for that refusal?

19       A    My basis for that, sir, would be the fact that in

20   dealing with Mr. Melton he, at the bottom of the document

21   number two, express consent affidavit form, Mr. Melton refused

22   to sign that, stating that he understood the restrictions and

23   the circumstances of what was taking place.

24           He refused to sign that; he was in custody at the

25   time.  Be that he refused to sign temporary -- or the express

14

1   consent affidavit notice of revocation I did not issue him a

2   temporary license.

3       Q    Okay.  So just so that I'm clear, your position is

4   that if someone does not sign that express consent form that

5   they will not be issued a temporary permit?

6       A    That is correct.  If they will not sign that form that

7   is explained to me that they -- it's not admitting guilt and

8   it's not admitting anything beyond the fact that they

9   understand why they're -- or what is taking place, and that

10  they have seven days to receive -- or request a hearing.

11      Q    Now Officer Cowan was with you at the time of the

12  arrest, correct?

13      A    She was riding with me as a double unit that morning.

14      Q    And it was Officer Cowan that arrested Mr. Melton two

15  days later for driving under revocation?

16           HEARING OFFICER:  Counsel, excuse me.  That is not

17  part of this hearing.  That may be another matter, a criminal

18  matter, but it's not part of this hearing.

19           MR. SCHUMACHER:  I think -- respectfully, I think it

20  goes to credibility.

21           HEARING OFFICER:  All right.  Continue then.

22      Q    (By Mr. Schumacher)  Okay.  I didn't catch your

23  answer, Officer.

24      A    I stated I was not on duty that day so I would not

25  know if Ms. -- or Officer Cowan did in fact contact and arrest

15

1    Mr. Melton on that date and time.

2        Q    Okay.  So as you sit here today you're not aware of

3    that fact?

4        A    If you tell me that in fact there was an arrest, then

5    yes I would believe you, because I would assume that there are

6    records of it in our department.  But, no.  I was not on duty

7    that day and I was not involved.

8        Q    Okay.

9            MR. SCHUMACHER:  I have no further questions.

10            HEARING OFFICER:  All right.  Counsel, I just wan to

11    have you look at Exhibit Number 2, and right at the bottom it

12    says, "In order for the temporary permit to be granted it must

13    sign -- be signed by both you, the Respondent, and the police

14    officer."

15            MR. SCHUMACHER:  Oh, yeah.  Yeah.  I'm well, aware of

16    that.  I --

17            HEARING OFFICER:  Okay.  And --

18            MR. SCHUMACHER:  -- (inaudible) is just that that's

19    -- that that's not what the law says.

20            HEARING OFFICER:  Right.  And then on the other part

21    he did get a temporary license five days later.

22            MR. SCHUMACHER:  He did, but that was after he

23    applied at the Department of Motor Vehicles.

24            HEARING OFFICER:  Exactly.  But what the Officer

25    said, if he refused to sign that there could be no temporary

16

1   permit granted.  The Officer could not give it.  It's right

2   there on that Express Affidavit and notice of revocations, it

3   says right there at the temporary permit.  Do you -- do you

4   read that?  "This entire notice and order is a temporary permit

5   which expires on the seventh day of the date of notice.  When

6   indicated below and when signed by both you and the peace

7   officer."

8           MR. SCHUMACHER:  Yeah.  It's clear to me that's what

9   the form says.

10          HEARING OFFICER:  Okay, thank you.  Okay.  Do you

11  wish to have your client testify?

12          MR. SCHUMACHER:  No.

13          HEARING OFFICER:  Do you wish to present any

14  argument, Counsel?

15          MR. SCHUMACHER:  Just briefly.

16          HEARING OFFICER:  Please.

17          MR. SCHUMACHER:  I believe that the -- the series of

18  events that -- that transpired in this case, it goes to

19  credibility.  I think there's a serious concern regarding the

20  actions of the police department in this case, and so I think

21  I'm at basis the revocation ought not to be withheld.

22          I would like to just emphasize that this notice that

23  -- that we're referring to, the express consent affidavit,

24  notice of revocation is in direct conflict with the statute

25  which states that it shall be issued unless a person is -- a

17

1   temporary permit, that it shall be issues unless a person is

2   currently under a -- currently under a temporary permit and Mr.

3   Melton was not.

4           So the affidavit is -- is wrong and just want to

5   state that for the record, thank you.

6           HEARING OFFICER:  Thank you, Counsel.  I do find

7   there was reason for the Officer to contact Mr. Melton because

8   of the failure to stop at a controlled section.  I do find the

9   Officer had probable cause to believe that Mr. Melton may be

10  driving impaired by alcohol because of the odor of an alcoholic

11  beverage on his breath, bloodshot watery eyes, failure to

12  perform voluntary roadside maneuvers satisfactorily.

13          And the Officer did place him into custody.  Express

14  consent law of Colorado was explained and Mr. Melton did not in

15  anyway choose a test of his breath or his blood.  And I find

16  the credibility of the Officer to be evident and I'm going to

17  hold that this -- the facts do sustain a revocation; that

18  revocation goes into effect and it went into effect I believe

19  in January.  He was told not to drive after January the 10th,

20  2005.  So please do not drive and the revocation will be in

21  effect for a period of two full years of no driving.

22          Thank you, Counsel.  Thank you, Officer.  Hearing's

23  closed.

24      (Whereupon the proceedings were concluded)

25

18

```
 1                    TRANSCRIBER'S CERTIFICATE

 2

 3          I, Matthew Smith, do hereby certify that I have

 4     listened to the recording of the foregoing; further that the

 5     foregoing transcript pages 1 through 17, were reduced to

 6     typewritten form from a digital recording of the proceedings

 7     held February 28, 2006, in this matter; and that the foregoing

 8     is an accurate record of the proceedings as above transcribed

 9     in this matter on the date set forth.

10          DATED this 8th day of May, 2007.

11

12

13

14

15                              Matthew Smith
                                A/V Tronics, Inc.
16                              600 17th St., Suite 2800
                                Denver, CO 80202
17                              (303) 634-2295

18

19

20

21

22

23

24

25
```

**A/V▾ TRONICS, INC.**
Electronic Court Reporting & Transcription
Denver, CO * Phoenix, AZ * Tucson, AZ
(303) 634-2295