**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  07-CV-00029-RPM-PAC

BUCK MALOY MELTON,

        Plaintiff,

v.

CITY OF GUNNISON, COLORADO, OFFICER RONALD MOORE, Individually and
OFFICER GRACE COWAN, Individually

        Defendants.

---

**RESPONSE TO DEFENDANTS' COMBINED MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM BRIEF IN SUPPORT**

---

**Statement of the Case and Summary of the Parties Positions**

Mr. Melton has alleged that Officers Moore and Cowan engaged in conduct that resulted in an illegal stop and arrest on January 4, 2006.  In summary, Mr. Melton has previously pled:

    a.    On January 2, 2006 Mr. Melton was arrested for Driving Under the Influence by Officers Moore and Cowan.  Mr. Melton surrendered his license to the Officers after they determined he refused chemical testing. Complaint ¶ ¶ 13-15.

    b.    Mr. Melton was not issued a temporary permit, even though Colorado law required that a permit was to be given to Mr. Melton pursuant to C.R.S. § 42-2-126 (5) (b) which mandates that the "officer … shall issue a temporary permit which is valid for seven days after the date of its issuance." Complaint ¶¶ 16-17.

    c.    Officer Moore provided false information that Mr. Melton was not entitled to drive following his January 2, 2006 contact with Mr. Melton. Officer Moore acted on this information by not issuing Mr. Melton the required permit. This resulted in Mr. Melton's

being stopped and arrested without reasonable suspicion or probable cause on January 4, 2006. Complaint ¶ 28.

    d.   On January 4, 2006 Officer Grace Cowan stopped Mr. Melton's car. There was not probable cause or reasonable suspicion to detain Mr. Melton. Complaint ¶ 18.

    e.   Officer Cowan then continued to violate Mr. Melton's constitutional rights by placing him under arrest and taking him to jail without probable cause. Complaint ¶¶19, 22, and 31.

In short, Mr. Melton has pled that Officers Moore and Cowan violated Colorado law on January 2, 2006. This violation was a *but for cause* of the unlawful stop and arrest performed by Officer Cowan on January 4, 2008. In sum, if either Officer Moore or Cowan had followed the law and issued a temporary permit as Colorado law commands, then the *Fourth Amendment* violation that occurred on January 4, 2006 most likely would not have occurred.

With respect to the Defendant City of Gunnison Mr. Melton has asserted that--through its training, policies, procedures customs and practices the City exhibited a reckless disregard of the Constitutional Rights of the people of Gunnison. The result of this is that Officers placed in the position of Officers Moore and Cowan violated the Constitutional rights of Mr. Melton. Complaint ¶ ¶35-37.

The individual Defendants have claimed the defense of qualified immunity. With respect to Officer Moore he essentially claims that the fault lies with the Department of Revenue for issuing a form that does not comply with Colorado law. He points out that the Department of Revenue is required to issue the form for a temporary license given to motorists who have had to surrender their driver's license following a police officer's determination that the motorist either has a high blood

2

alcohol content or has refused to submit to chemical testing. COLO.REV.STAT § 42-2-126(5) (d) reads:

> (d) The department shall provide forms for notice of revocation and for temporary permits to law enforcement agencies. The department shall establish a format for the affidavits required by this section and shall give notice of such format to all law enforcement agencies which submit affidavits to the department. Such law enforcement agencies shall follow the <u>format</u> determined by the department.

(Emphasis Added).

Although this portion of the statute merely discusses the Department of Revenue's duty to establish a format for the affidavits and that the police departments are supposed to "follow the format determined by the department, [of Revenue]" the Defendant Ronald Moore argues that he was required to follow the form even though the form's language does not track the mandate of COLO.REV.STAT § 42-2-126 (5) (b) which mandates:

> When the law enforcement officer serves the notice of revocation, the officer shall take possession of any driver's license issued by this state or any other state which is held by the person. When the officer takes possession of a valid driver's license issued by this state or any other state, the officer acting on behalf of the department, <u>shall issue a temporary permit which is valid for seven days</u>.
>
> (c) A copy of the completed notice of revocation form, a copy of any completed temporary permit form, and any driver's minor driver's, or temporary driver's license or any instruction permit taken into possession under this section shall be forwarded to the department by the officer along with the affidavit and documents required in subsections (2) and (3) of this section.

Although the language of the statute is clear and unambiguous Defendant Officer Ronald Moore claims that he should be entitled to qualified immunity even though he violated the letter of the law as it was written.

Defendant Grace Cowan states that she had probable cause to arrest Mr. Melton because he was driving without an operator's license. It is the Plaintiff's position that this argument ignores the fact that Officer Moore acted outside of his authority and contrary to the law of Colorado by intentionally not giving Mr. Melton a driver's permit as required by COLO.REV.STAT § 42-2-126. The Defendants also appear to argue that even if Officer Cowan was mistaken as to whether she had reasonable suspicion to stop Mr. Melton and then as to whether she had probable cause to arrest him that this mistake was reasonable and that she therefore should be availed of the qualified immunity doctrine and that summary judgment should therefore be granted.

The City of Gunnison states that the Plaintiff cannot demonstrate a Fourth Amendment violation by Officers Cowan and Moore and that there is no record of constitutionally inadequate training or supervision. They further attempt to argue that the City too was simply relying on the form issued by the Department of Revenue. As described below the record will show that the training that Gunnison provided to its officers was in direct contravention of Colorado law. Had it not been for this incorrect training the Fourth Amendment Violation that occurred on January 4, 2006 would not have occurred.

## Statement of Facts and Statement of Undisputed Facts

1.      On January 2, 2006 Mr. Melton was stopped, detained and ultimately arrested by Officer Ronald Moore who was assisted by Officer Grace Cowan for offenses including Driving Under the Influence.  (Defendant Statement of Facts ¶ 1-2)

2.      Mr. Melton stated that he had stopped at the stop sign but had "slid all of about two or three feet." [Transcript of Deposition of Buck Melton, Defendants **Exhibit D,** at p. 78, ll. 20-22]; Trial Transcript of 06 T 03, Gunnison County June 2, 2006, p.114 l.23, appended hereto as **Exhibit 1.**

3.      Mr. Melton rolled down his window but he did not roll it down entirely because it was cold. **Exhibit 1** p. 115, ll. 22-25

4.       Mr. Melton rolled down his window the entire way and then attempted to give Officer Moore the paperwork that the Officer had requested. Mr. Melton had recently bought this car and had just switched the paperwork from temporary to permanent paperwork.  In order to speed up the process, after looking for the correct paperwork to hand Officer Moore, Melton then handed the officer his bill of sale.  **Exhibit 1**, p. 116 ll. 1-14.

5**.**      Mr. Melton took roadside tests. Part way into the walk and turn he was told by Officer Moore that he had not been instructed to do the test yet and that he was under arrest. **Exhibit 1,** p. 117 ll. 23-25 – p.118 ll. 1-12.

6.      After he was arrested Mr. Melton was in the back of the car when Officer Moore first mentioned anything about a chemical test. Since he was already arrested, Mr. Melton believed this was merely a "formality." **Exhibit 1,** p. 121, ll. 16-24.

7.     Mr. Melton initially said no.  However, once he arrived at the police station another officer asked whether he wanted to take a breath or blood test.  This time Officer Moore answered for Mr. Melton, saying that Mr. Melton had refused. **Exhibit 1**, at p. 121, ll. 16-24; Deposition of Buck Melton attached as **Exhibit 2,** p. 119 ll. 1-12.

8.     With respect to signing the express consent form, Mr. Melton has stated that, "I think I stated somewhere else that if I had the opportunity to spend some time and read things and understand them, then I probably would have signed whatever." **Exhibit 2**, p. 121 ll. 17-22.  A chemical test was never taken.

9.     Regardless of whether the refusal was a proper refusal or not, Officer Moore intended to not issue Mr. Melton a temporary driving permit and believed that he had not issued Mr. Melton a temporary driving permit. Officer Moore states that he told Mr. Melton that Mr. Melton could not drive. Affidavit of Ronald Moore **Defendants' Exhibit A ¶ 15.**

10.    As previously noted, Colorado law states that:

> When the law enforcement officer serves the notice of revocation, the officer shall take possession of any driver's license issued by this state or any other state which is held by the person.  When the officer takes possession of a valid driver's license issued by this state or any other state, the officer acting on behalf of the department, <u>shall issue a temporary permit which is valid for seven days</u>.

COLO.REV.STAT § 42-2-126 (5) (b).

11.    The defendants' contention that "Pursuant to Colorado law, Plaintiff's driver's license was surrendered to Officer Moore," is in fact in dispute. (See *Defendants' Combined Motion and Memorandum For Summary Judgment* page 5 ¶ 9).  The Plaintiff asserts that he followed the law by

surrendering his driver's license but that Officer Moore violated Colorado law when he refused to issue the temporary permit required by COLO.REV.STAT § 42-2-126 (5) (b).

12. Two days later, the time, within which a temporary permit would remain valid, Mr. Melton was stopped, detained, and arrested by Officer Grace Cowan for Driving Under Revocation. Driving Under Revocation carries a mandatory jail sentence.

13. Prior to her stop of Mr. Melton, Officer Cowan did not see Mr. Melton break any traffic laws. The only reason for her stop was that she believed that he was not entitled to drive as a result of the events of January 2, 2006. Deposition of Officer Grace Cowan attached as **Exhibit 3,** p.5 ll.1-8, p. 49 ll. 13-18.

14. Mr. Melton informed Officer Cowan that he believed he had a temporary permit. He then showed Officer Cowan the form that Officer Moore had provided to him. **Exhibit 3** p.6. This form is the express consent affidavit that serves as a temporary permit. This document is **Defendants Exhibit A Attachment 1**.

15. Mr. Melton informed Officer Cowan that he believed that he had a temporary permit because he had spoken to a lawyer. Deposition of Officer Grace Cowan attached as **Exhibit 3** p. 7 ll. 5-12.

16. Although, the Defendants claim that they were just following the form issued by the Department of Revenue, the back of this form states, "If you refuse to submit to test(s) as requested by the officer, the test(s) will not be given and the officer will serve forthwith an Affidavit and Notice of Revocation on behalf of the Department of Revenue to become effective on the eighth (8th)

7

<u>calendar day after date of notice shown on the other side</u>." **Defendants' Exhibit A Attachment 1** *Information Concerning Colorado Law ¶ 3.*

17.     Mr. Melton was within this window of time that Colorado provides when he was stopped, detained and arrested by Officer Cowan.

18.     Even though, Mr. Melton was within this window of time to be able to legally drive, on January 2, 2006 Officer Ronald Moore had told Mr. Melton that he would not be able to drive from this date forward. **Exhibit 3** p. 27 ll. 15-18.

19.     Officer Cowan was asked why she believed Officer Moore had the authority to not issue a permit. She responded, "Because of the refusal and the refusing to sign." When asked, "Who informed you that a suspect's refusal to sign that form could result in an officer not issuing a temporary permit," Office Cowan explained that this is how they were trained and that she received her training from the Field Training Officer who at the time was Officer Martin King. **Exhibit 3** p.32-33.

20.     Officer King was employed by the City of Gunnison **Exhibit 3 p. 35** ll. 15-17. Officer King trained Officer Cowan not to give a permit if a driver refuses to sign the express consent form. **Exhibit 3** p. 38 – 39.

21.     Officer King was the only person who trained her with respect to the issue of what to do if someone does not sign the notice of revocation form. Officer Cowan was trained with Officer Ronald Moore by Officer King. **Exhibit 3** p. 41-42.

22.     Officer Cowan admits that her understanding of the refusal law was different than what is set forth in COLO.REV.STAT § 42-2-126 (5) (b) with respect to the issuance of a temporary

permit. **Exhibit 3** p. 43-44.  There is a discrepancy between what the statute says she is supposed to do and what she believed she was supposed to do.  **Exhibit 3** p. 44-45.

23. With respect to her training, Officer Cowan did not believe they relied on any materials provided by the Department of Revenue. **Exhibit 3** p. 66-67.

24. Officer Cowan first learned about the discrepancy between the statute and the Norice of Revocation/ Temporary Permit Form at the criminal trial.  This discrepancy was never discussed by the Gunnison City Attorney or other police officers. **Exhibit 3** p. 45.

25. With respect to the remainder of Officer Cowan's contact and arrest with Mr. Melton, she admitted that when she initially called in Mr. Melton's stop, the dispatch operator reported that his driver's license status was coming back as clear and valid. **Exhibit 3** p. 46.  The operator then asked Officer Cowan whether they should check this.  Officer Cowan responded, "Negative, I am pretty sure that he is not valid." **Exhibit 3** p. 47.

26. The dispatch operator later said that Mr. Melton was not given a temporary permit and his license had been surrendered. **Exhibit 3** p.47. ll 7-12.

27. For this later information the dispatch operator was most likely relying on a computer version of Officer Moore's file when she determined that Mr. Melton was not issued a permit and therefore should not be driving.  Her initial information came from the CCIC computer database which accesses the Colorado Department of Revenue licensing information. **Exhibit 3** p. 47-49.

28. Parenthetically, Mr. Melton was acquitted of the January 2, 2006 Driving Under the Influence charges and the January 4, 2006 case was dismissed.

29.     Chief Anderson testified that he as Chief of Police and Captain Robinson are in charge of training. Chief Greg Anderson's Deposition attached as Exhibit 4 p. 14-15.

30      Additionally the District Attorney provides training on Driving Under the Influence Issues. Exhibit 4 p. 24-26.

31.     Chief Anderson's understanding is the city's lawyers had not reviewed the forms that are issued by the Department of Revenue prior to this lawsuit. Exhibit 4 p. 33.

32.     Neither the Department of Revenue nor the Department of Transportation has trained the Gunnison officers. Exhibit 4 p. 36.

33      Officer Anderson did not know why the front page of the Notice of Revocation form has a discrepancy with COLO.REV.STAT § 42-2-126. Exhibit 4 p. 48.

## ARGUMENT

### 1.  Officer Grace Cowan and Ronald Moore Are Not Entitled to Qualified Immunity

In the case of *Harlow v. Fitzgerald* the Supreme Court held, "that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

> On summary judgment the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time the action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful … If the law was clearly established the immunity defense

> ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither know nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.
>
> By defining the limits of qualified immunity in essentially objective terms, we provide no license for lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official would be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate, and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken with independence and without fear of consequences.

*Harlow v. Fitzgerald* 457 U.S. 800 at 818-819. (Quotation and Citation Omitted).

Mr. Melton asserts and it is undisputed that Officer Moore did not issue a temporary permit on January 2, 2006 even though he was required to by Colorado law. Following this, Mr. Melton had talked to a lawyer and had determined that under Colorado law, so long as he had his notice of revocation that also serves as a temporary permit he could lawfully drive a car and apply for a hearing. The hearing officer would determine whether he could keep his license or whether the license would be revoked.

However, instead of this occurring, Office Cowan determined that Officer Moore had the authority to strip Mr. Melton of his right to drive his automobile. Although, Mr. Melton was engaged in completely lawful conduct he was stopped, detained, and arrested. The whole reason this occurred was because the police officers did not initially follow the state law and that failure resulted in a Federal Constitutional violation two days later.

The Defendants state that Officer Moore did not violate the law and that he himself was following the statute. The statute states:

> (5)(a)(I) Whenever a law enforcement officer requests a person to take any test or tests as required by section 42-4-1301.1 and such person refuses to take or to complete or to cooperate in the completing of such test or tests, or whenever such test results are available to the law enforcement officer and such tests show an alcohol concentration sufficient to warrant revocation under paragraph (a) of subsection (2) of this section, and when the person who is tested or who refuses to take or to complete or to cooperate in the completing of any test or tests is still available to the law enforcement officer, the officer, acting on behalf of the department, shall serve the notice of revocation personally on such person.
>
> (b) When the law enforcement officer serves the notice of revocation, the officer shall take possession of any driver's license issued by this state or any other state which is held by the person. When the officer takes possession of a valid driver's license issued by this state or any other state, the officer, acting on behalf of the department, shall issue a temporary permit which is valid for seven days after it's date of issuance.
>
> (c) A copy of the completed notice of revocation form, a copy of any completed temporary permit form, and any driver's, minor driver's, or temporary driver's license or any instruction permit taken into possession under this section shall be forwarded to the department by the officer along with the affidavit and documents required in subsections (2) and (3) of this section.
>
> (d) The department shall provide forms for notice of revocation and for temporary permits to law enforcement agencies. The department shall establish a format for the affidavits required by this section and shall give notice of such format to all law enforcement agencies which submit affidavits to the department. Such law enforcement agencies shall follow the format determined by the department.

COLO.REV.STAT. § 42-2-126 (2006).

It is uncontroverted that Officer Moore violated subsection (b) of the above quoted statute. However, the Defendants argue that he was following the law because subsection (d) requires the officer to follow the form. However, all this subsection requires is that the

department shall establish a "<u>format</u> for the affidavits required by this section and shall give notice of such <u>format</u> to all law enforcement agencies which submit affidavits to the department. Such law enforcement agencies shall follow the <u>format</u> determined by the department." COLO.REV.STAT. § 42-2-126(5)(d) (2006).

The statute does not prescribe what the content rather than the format of the form is. Webster's defines format as follows:

1: the shape, size, and general makeup (as of something printed)

2: general plan of organization, arrangement, or choice of material (as for a television show)

3: a method of organizing data (as for storage) <various file *formats*>
http://www.merriam-webster.com/dictionary/format

The officers' contention that the format of something trumps the written law is untenable. There is evidence in the record that show that this position is untenable. The Defendants in their brief cited to language from Plaintiff's expert witness Gary Pirosko. Mr. Pirosko is a former DUI police officer, prosecutor and now criminal defense attorney. The understanding has always been that when an officer takes a license he or she gives a temporary permit. Deposition of Gary Pirosko **Exhibit 5** p. 20-21. Furthermore, Mr. Pirosko brought examples of Notice of Revocation that had been used in other cases. These forms are like the ones at issue in this case. In those instances various departments issued a temporary drivers permit as required by law. Mr. Pirosko pointed out that police agencies, including Parker, Denver, Douglas County Sheriff's Office, the Wheat Ridge Police Department, the Colorado State Patrol and the Boulder County Sheriff's Department did the right thing which was the complete opposite of what was done to Mr. Melton. **Exhibit 5** p. 33-34

and Deposition Exhibit 7 attached as **Exhibit 6**. A police officer does not have the authority to unilaterally take away someone's driver's license **Exhibit 5** p. 47-49.

Furthermore, taking away someone's driver's license, in the manner that Officer Moore did without a hearing by an independent fact finder is a violation of procedural due process. *See Atencio v. Board of Education,* 658 F.2d 774, 779 (10th Cir. 1981) stating that "It is not every disregard of its regulations by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in decisional processes of state institutions." It was Officer Moore's initial violation of state law and his failure to act in his capacity as an agent of the Department of Revenue that caused Mr. Melton to be unlawfully stopped and arrested two days later. 42 U.S.C. § 1983 states

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Not only did Officer Moore's initial noncompliance with state law cause the subsequent constitutional violation, it cannot be determined that his failure and Grace Cowan's failure to follow the applicable laws be deemed reasonable. As stated above, the officers blame the form they were using rather than any substantive law that they are obligated to follow. Comparable to this is the fact that when an officer has a deficient warrant signed by a judicial officer, the officer still must show in the 42 U.S.C. 1983 context that "a reasonably well trained officer in petitioner's position would have

known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." The officer is still required to exercise "reasonable professional judgment." *Malley v. Briggs*, 475 U.S. 335, 345-346 (1986).

In this case, Mr. Melton simply states that the officers should have been familiar enough with COLO.REV.STAT. § 42-2-126 that they did not impulsively act as the judge and determine that Mr. Melton had no right to be on the road and that he could bepulled over for a criminal offense when he plainly could not.

## 2. The City of Gunnison is Not Entitled to Summary Judgment

As previously stated both Officer Cowan and Chief Anderson have testified that the training that Gunnison provides its officers states that if the Notice of Revocation Form is not signed by a driver, then the police officer does not issue a temporary permit. As a matter of fact they attribute there training to the reason that they understood the Express Consent form and procedure in the manner that did in January 2006. Therefore, it is the training policies and practices that led directly to the unlawful detention of Mr. Melton on January 4, 2006. It was the execution of this training or custom that inflicted the constitutional harm. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).

There is no dispute that the training contradicts COLO.REV.STAT. § 42-2-126. It is this faulty training that led to the unlawful seizure of Mr. Melton on January 4, 2006. Chief Anderson testified at his deposition that the city's lawyers had not reviewed the forms. In essence no effort had been made by the city to ensure that its officers complied with the law. To the contrary Officer Cowan's uncontroverted testimony is that she acted the way she did because that is how she has been trained.

As a result on January 2, 2006 Officers Moore and Cowan did not follow Colorado law. This had the result of Officer Cowan violating Mr. Melton's Fourth Amendment rights two days later.

## **CONCLUSION**

Officer Cowan and Officer Moore did not act reasonably when they did not follow both statutory and Constitutional mandates. These laws were in effect at the time and they were clearly established. Furthermore there are no extraordinary circumstances that excuse there failure to follow the law. The City of Gunnison did not properly train these officers and there is ample evidence in the record to establish that. Summary judgment should therefore be denied to all defendants.

*/s/ Sean M. McDermott*
SEAN M. MCDERMOTT
ATTORNEY AT LAW for Buck Maloy Melton
McDermott, Hansen, & McLaughlin, LLP
1890 Gaylord Street
Denver, CO 80206
Phone 303-399-6037
Fax 303-322-3423
E-mail address:  smcdermott@mhmlawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this 3rd day of March, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Eric M. Ziporin, Esq.
eziporin@sgrllc.com

Elliott J. Scott, Esq.

escott@sgrllc.com